THE PEOPLE, *ex rel.* Failing, *vs.* THE COMMISSIONERS OF HIGHWAYS of the town of Palatine, Montgomery county.

Where the object and subject of an act of the legislature was to authorize and direct the commissioners of highways of a specified town to reduce a road then of the width of four rods, and for the distance of one mile, to the width of three rods; and the title of the act was, " An act to regulate a road in the town of Palatine, Montgomery county ;" *Held* that the *subject* of the act was not *expressed in its title,* as required by section 16, of article 3, of the state constitution, and that the act was an attempted fraud upon the public rights, and was null and void.

After land taken for a road has been paid for by the public, it cannot be taken from the public and donated to the former owner, without any consideration paid therefor, by an act of the legislature purporting to reduce the width of the highway.

When town authorities have taken the land of an individual for the purposes of a public highway, and have paid the proprietor therefor, the right to the *easement* becomes a vested right in the public; and the public having received the land, and the proprietor the compensation, it becomes a fixed contract between them, and the provision of the constitution of the United States,

The People *v.* Commissioners of Highways of the town of Palatine.

declaring "that no state shall pass any law impairing the obligation of contracts" applies.

The right of eminent domain, in the state, does not authorize the taking of property belonging to the public as a highway, and donating it to an individual.

APPEAL by the defendants from an order made at a special term, directing a peremptory mandamus, to the commissioners of highways of the town of Palatine, in the county of Montgomery, commanding them, forthwith, to reduce a certain highway in said town, from the width of four rods, to the width of three rods, under the provisions of an act of the legislature, passed May 7, 1868, chapter 687, entitled "An act to regulate a road in the town of Palatine, Montgomery county." The first section of this act directs the said commissioners to alter and reduce to the width of three rods, the following described highway in said town, to wit: "Beginning at the house of Jacob Cook, now occupied by said Cook as a residence, and running thereon westerly, past the dwelling house of John A. Failing, to the intersection of the highway, leading from Palatine bridge to the residence of Reuben Walrath."

The commissioners of highways refused to act as demanded by the relator. Upon which, the relator moved for a peremptory mandamus, which was granted, on motion, by an order; from which order the said commissioners appealed to the general term. The other facts necessary to be stated, appear in the opinion

*J. H. Failing,* for the relator.

*J. Genter,* for the commissioners.

*By the Court,* POTTER, J. If the order made in this case can be legally reversed, a high sense of common justice demands its reversal. Legislative abuses, in disregard of private property, have become the standing reproach of

the day. Important encroachments upon public and individual rights, in blind disguise, and with bold impunity of consequence, are smuggled through the legislature, by acts bearing most deceitful or mysterious titles, and so ingeniously devised as to ward off all suspicion or inquiry, or entirely to mislead parties interested, as to the object of the act, if perchance they should ever read its title. Such considerations as these, in relation to this existing evil, so frequently brought, as they are, to the knowledge of the courts, imperiously call upon us when the occasion presents itself, to look with a proper and jealous scrutiny, that the constitution, in subordination to which all statutes are subject, shall not be encroached upon; nor its provisions contravened by legislative action. The framers of the constitution, it seems, were fully impressed with the existence of such abuses, and determined to guard against them. The 16th section of the 3d article of the constitution declares that "in all local and private bills, the subject of the bill shall be expressed in its title." The object and subject of the bill in question, is to authorize and direct the commissioners of highways, of the town of Palatine, in the county of Montgomery, to reduce an important and much traveled road now of the width of four rods and for the distance of one mile, to the width of three rods. The title of the act by which this reduction in width is to be accomplished is, "*An act to regulate a road in the town of Palatine, Montgomery county.*" We are not informed what number of roads of this, or of greater or less length there may be in said town; so that the title would apply to, perhaps, twenty or more roads, just as well as to this; and we may well suppose that each road district and its inhabitants whose road was supposed to need no "*regulating,*" would be entirely unconcerned at reading the title to such an act; but it is easy to suppose that the title of an act which had truly expressed its object, entitled "An act to reduce the width of the road in the town of Palatine,

beginning at the house of Jacob Cook, and running thereon westerly past the dwelling house of John Adam Failing for the distance of one mile," would have encountered severe opposition, and probably defeat. The *body* of the bill expresses its object; the *title* of the bill disguises and conceals it. No person, from reading its title, would ever guess at its object. In this respect, the act is a fraud upon the public; it is a fraud upon the constitution. The words employed in the title, " *to regulate*," are not only inappropriate, but deceptive. The words in the enactment are, " *to alter and reduce the width*," expressing an entirely different idea. The *title* gives not the locality, distance, or object to be accomplished. The fraud is too transparent to be tolerated; it is too miserably bungling in every feature to succeed. The act is *local*. The subject is not fairly or honestly expressed in the title; but carefully avoided. That the act was conceived in fraud, and its title designed to defraud; its extraordinary provisions; and the attempted action under it, is practical, and confirmatory evidence.

Let us look, for one moment, at the merits of this question; at the condition and circumstances of this public easement before and since the passage of this act. This is a public highway, much traveled; leading to Palatine bridge over the Mohawk river in one direction, and to Stone Arabia churches, and through the town of Ephratah in Fulton county, in the other; that such was the extent of travel on this road, that in the year 1848, it was widened to four rods by the public authorities of the town, and duly recorded in the town book; that at the time of such widening, there was paid to the said *relator* and the other proprietors, for such widening, the sum of $340; that all of said sum, except $75, was for the land now owned by the relator; all of which land is within the distance now intended to be made narrower under the provisions of this act. The effect of which would be, if this act is carried

out, to give the *relator* a strip of land one rod in width, and of the length of nearly one mile, which land has been paid for at public expense; a large portion of which payment of money, is now in the relator's pocket. This act proposes to take from the *public,* without *consideration* to them, this easement and right in real estate, and donate it to the relator. A more shameful and unblushing attempt at moral larceny, on a small scale, was never attempted; and a more disgraceful design of obtaining money by false pretenses, and by legislative legerdemain and chicanery, does not pollute the statute book; and it now remains with the court to say whether such infamy can be so perpetrated under this kind of legislation. This legislative act is imperiously mandatory to the defendants; without requiring the ordinary decencies of that common and reasonable inquiry by the accustomed authorities, whether this land so to be surrendered up, was any longer needed for public use. The act seems to forbid the exercise of any official judgment, discretion, or duty of this character. It demands, without a reason or a wherefore, that this public vested interest shall be transferred to a private individual, without any compensation whatever, to be given the *public* from whom it is to be taken. It is not necessary to enter into an argument, to prove that when the town authorities took the land in question for the public purposes of a road and had paid for it according to law to the original proprietors, the right to this easement became a vested right in the public; that when the public had thus received the lands, and the proprietors had received the compensation, it became a fixed contract between them. It is only necessary then to say that the constitution of the United States, article 1, section 10, declares, " that no state shall pass any law impairing the obligation of contracts."

Under a government controlled by written constitutions, legislatures are not the supreme power. Whenever they

step beyond the limits inhibted by constitutional authority, they have transcended their power, and their acts are utterly void. Legislation is not, therefore, omnipotent.

There is another ground upon which this act is void. In the case of *Varick* v. *Smith*, (5 *Paige*, 137,) Chancellor Walworth said, " that the right of eminent domain in the state, does not imply a right in the sovereign power of the state to take the property of one and transfer it to another, when the public interest could be in no way promoted by such a transfer, even if a *full* compensation was fully awarded to the owner thereof." How much more forcibly is this doctrine true, when it is attempted to be taken from the public and *donated* to an individual. In the matter of *Albany Street*, (11 *Wend.* 151,) where commissioners had been appointed to take property for *public* use, had taken a whole lot, when only a *part* of it was required for the street, under an act which enacted, " that when a part of a lot was taken for public use, the commissioners, if they deemed it expedient, might include the whole lot in the assessment." Chief Justice Savage said: " If this act is to be taken literally, that the commissioners may, against the consent of the owner, take the whole lot, when only a part is required for public use, it was the assumption of a power the legislature did not possess." And this was a case where some compensation was to be paid for the property taken. But to take the property of one, though it be the *public*, and donate it to an individual, is not only a violation of natural right, but of the spirit of the constitution. The great mass of moral, sober, thinking people, are raising the voice of indignation against legislative corruption, and legislative interference with *private* and *vested* rights, and of the snares and devices by legislative attempts to overreach the quiet, industrious but less informed portion of community. Unless this portion of the people can look to the *courts* for protection against these encroachments, there is nothing left to secure them the constitutional pro-

tection of *life, liberty and private property.* It appears to me, that this case presents the opportunity for judicial rebuke to legislative abuses of this character. I am clearly of the opinion that the act in question is an attempted fraud upon public rights; a gross attempt through the the forms of legislation, to obtain property by false pretenses; a fraud upon the requirements of the constitution as to the title of the act; and, in its provisions, is in direct contravention of the constitution of the United States.

I think that the order of the special term should be reversed with costs, and with costs to the defendants on the motion at special term.

[SCHENECTADY GENERAL TERM, January 5, 1869. *James, Rosekrans, Potter* and *Bockes,* Justices.]