(December 26, 1903.)

TURNER, STATE AUDITOR, v. COFFIN, STATE TREASURER.

[74 Pac. 962.]

TITLE TO LEGISLATIVE ACT—CONSTRUCTION TO BE GIVEN SAME—CONSTITUTIONAL REQUIREMENT—INTERPRETATION OF SAME.

1. Under section 16 of article 3 of the state constitution, which provides that "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be embraced in the title," the courts must give a liberal construction to the language used by the legislature in framing the title to any given act which they may pass.

2. It was evidently the intention of the framers of such constitutional provision to require a title sufficiently definite and comprehensive as to indicate to one reading it the general scope and purpose of the legislation intended by the act, and if the title be sufficient for that purpose it will be held as including all necessary and incidental legislation required to make the general purpose of the act operative.

3. Act approved March 4, 1903, entitled "An act to provide for the care and keeping of moneys in the custody of the treasurer of the state of Idaho, and prescribing penalties," Session Laws of 1903, page 375, *held,* insufficient to authorize legislation thereunder providing for the depositing of the public funds in banks designated as state depositories and the collection of interest thereon, and the removal of such funds beyond the custody and control of the state treasurer.

4. *Held, further,* that the legislation attempted to be enacted under said title is not in harmony with such title and is not fairly indicated by the title.

5. *Held, further,* that the legislature cannot in the title of an act use language which in the ordinary and usual acceptation of the terms thereof would imply and convey one meaning and in the body of the act declare that such language means the reverse.

(Syllabus by the court.)

ACTION by the state of Idaho upon the relation of Theodore Turner, state auditor and secretary of the state board of deposits, against Henry N. Coffin, state treasurer, upon application for writ of mandate requiring the treasurer to deposit certain of the public funds within a designated state depository. Alternative writ of *mandamus* quashed and writ denied.

John A. Bagley, Attorney General, and Henry Z. Johnson, for the Auditor.

This is a hearing on the return to an alternative writ of mandate in an original proceeding in this court. The proceeding involves the validity of an act of the legislature of the state of Idaho, entitled "An act to provide for the care and keeping of moneys in the custody of the treasurer of the state of Idaho and prescribing penalties," approved the fourth day of March, 1903. (Seventh Sess. Laws, p. 375.) The defendant attacks the validity of the law and assigns the following reasons why the writ heretofore issued should not be made peremptory: Because by the constitution he is the legal custodian of all state funds, and should he comply with the direction of the board he would be liable personally on his official bond in case of a loss of such public funds; that the order does not indicate from which of said funds he shall transmit said money; that the board is not authorized to be created by the constitution; that the defendant is not a member of said board; that he is the custodian of the public school fund, and that if he transmits said fund it would be contrary to law, as it would be a loaning of said money; that the act takes the funds from his custody without his consent, contrary to the provisions of law; and, finally, that the act contravenes the constitution in this, that the subject

matter of the act is not expressed in the title, that no money can be drawn from the treasury except in pursuance of an appropriation and that it interferes with his custody of the public school fund. In discussing the legal objections to the act urged by the defendant, his contention that he is the "constitutional custodian of all the funds of this state," and as such has "control" thereof and "cannot be interfered with by any statutory enactment," will be considered first, for, obviously, if the legislature can neither control the public funds nor provide for their care and keeping, then an inquiry into the sufficiency of the title to an act wherein it attempts to do so becomes unnecessary. But the state treasurer is not "the constitutional custodian of all funds," nor of any fund except "the public school fund," and the "control" of that fund is vested in the legislature. (Idaho Const., art. 9, sec. 3.) And the statement of counsel that "the responsibility of the treasurer is not a statutory responsibility" is likewise erroneous. His custody of the public moneys arises from his statutory duty "to receive and keep all moneys belonging to the state not required to be received and kept by some other person." (Idaho Rev. Stats. 1887, sec. 230, subd. 1.) The framers of the constitution recognized that "the control" of the public moneys was in the legislature, for they expressly provided that the state treasurer should "perform such duties as may be prescribed by law." (Idaho Const., art. 4, sec. 1.) And the legislature, after defining his duties, provided that he must "discharge such other duties as may be imposed upon him by law." (Idaho Rev. Stats., 1887, sec. 230, subd. 12.) The question whether the state is the owner of the public funds in the hands of its treasurer, or whether the legal title thereto is in the treasurer, must be determined by the statutes defining the rights, duties and liabilities of the treasurer. The citation to the statutes and constitution prescribing the duties and liabilities of the state treasurer are given herewith: Idaho Rev. Stats. 1887, sec. 230, subd. 12; sec. 6975; Idaho Const., art. 7, sec. 10; *State v. McFetridge,* 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223; *City of Healdsburg v. Mulligan,* 113 Cal. 205, 45 Pac. 337, 33 L. R. A. 463; *City of Livingston v. Woods,* 20 Mont. 99, 49 Pac.

437-440; *State v. Copeland,* 96 Tenn. 296, 54 Am. St. Rep. 824, 34 S. W. 427, 428, 31 L. R. A. 844; *In re House Resolution,* 12 Colo. 397, 21 Pac. 486. In pursuance of the constitutional direction that the treasurer shall "perform such duties as may be prescribed by law," and the statutory authority that he must "discharge such other duties as may be imposed upon him by law," the legislature enacted the law in controversy. With the expediency of this law this court has nothing to do. The treasurer is also under statutory bond to "faithfully perform such additional duties as may be imposed on him by any law of the state." (Idaho Rev. Stats. 1887, sec. 396.) And one of the "additional duties imposed on him" is the duty under the act in controversy, upon receiving the statutory notice that a bank has been designated as a state depository, "to forthwith transmit to such depository the amount of money allotted to it." (Seventh Sess. Laws, p. 373, sec. 11.) This "duty" is mandatory upon him. It is a ministerial and not a discretionary duty; and "if the treasurer properly performs the duty thus laid upon him, he will not be responsible for any loss that may occur by reason of the making of such deposits." (Seventh Sess. Laws, p. 373, sec. 11; *City of New Haven v. Fresenius,* 75 Conn. 145, 52 Atl. 823, 825.) It will be readily seen from the above constitutional and statutory provisions and the decisions herein cited that the "control" of the public funds is in the state, and their "custody" in the treasurer under the direction of the state. The distinction between "custody" and "control" is well stated in *People v. Burr,* 41 How. Pr. 293; cited in 8 Ency. of Law, 2d ed., 532. To control means to check, restrain, govern, direct, regulate. (7 Ency. of Law, 2d ed., 457; *State v. Bobleter,* 83 Minn. 479, 86 N. W. 461, 462; *State v. Hill,* 47 Neb. 546, 66 N. W. 541.) It is next contended that the act herein is void, because the subject matter thereof is not expressed in the title as required by the constitution, in this: That the title provides for the "care and keeping of moneys in the custody of the treasurer of the state of Idaho," while in the body of the act there is created a board of deposits, who, by the terms thereof. are authorized to designate banks as state depositories upon their complying with certain conditions, one

of which is the payment of interest to the state. (*Diana Shooting Club v. Lamoreaux,* 114 Wis. 44, 91 Am. St. Rep. 898, 89 N. W. 880, 882, 883; *Martin v. Taylor,* 4 N. Dak. 278, 60 N. W. 392, 395, 396, 25 L. R. A. 838; *State v. Sloan,* 66 Ark. 575, 74 Am. St. Rep. 106, 53 S. W. 47; *City of Seattle v. Barto,* 31 Wash. 141, 71 Pac. 735; *State v. Sharpless,* 31 Wash. 191, 96 Am. St. Rep. 893, 71 Pac. 737; *Hopkins v. Scott,* 38 Neb. 661, 57 N. W. 391; *Seay v. Bank of Rome,* 66 Ga. 609; *Spratley v. Board of County Commrs.,* 56 Kan. 272, 43 Pac. 232-235; *Colquitt v. Simpson,* 72 Ga. 501, 510, 511.) Defendant for a third ground of defense urges that the depositing of the public school fund in a designated depository is a "loan" of the same in contravention of the constitution. The Nebraska cases cited to sustain this point have, however, as the supreme court of South Dakota says in *Allibone v. Ames,* 9 S. Dak. 74, 68 N. W. 165, 166, 33 L. R. A. 585, "been overruled in a recent decision by the supreme court of that state," citing *State v. Hill,* 47 Neb. 546, 66 N. W. 541. (*State v. McFetridge,* 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223; *Nebraska v. First Nat. Bank,* 88 Fed. 947; *Bardsley v. Sternberg,* 18 Wash. 612, 52 Pac. 251-255; *Hunt v. Hopley,* 120 Iowa, 695, 95 N. W. 205.) Defendant says that the bond of the treasurer "charges him with the safekeeping of the state moneys." Also that "it charges him with the duty of paying over the state moneys at the end of his term," and cites *United States v. Prescott,* 3 How. 578, 11 L. ed. 734, as holding that his bond is violated when he fails to comply with these conditions, and that said decision has been "reaffirmed time and again." In the first place, the bond of the treasurer, under our statute, does not charge him with the "safekeeping" of the state moneys, nor does it obligate him "to pay over" said moneys at the end of his term, nor does the statute require him to "safely keep" the state moneys. (See Idaho Rev. Stats. 1887, sec. 230, subd. 1; also Idaho Rev. Stats. 1887, sec. 396.) While it is true that in *United States v. Prescott,* it was held under the bond in that case that Prescott was an insurer of the public funds, it is not true that said decision has been "reaffirmed time and again." To the contrary, as the supreme court of Wyoming says in *State v. Gramm,* 7 Wyo. 329,

·52 Pac. 540, 40 L. R. A. 698, "the doctrine announced in such comprehensive terms by the Prescott case has, however, been considerably modified in a later case in the same court, to wit, ·*United States v. Thomas,* 15 Wall. 337, 21 L. ed. 89." (*State v. Copeland,* 96 Tenn. 296, 54 Am. St. Rep. 824, 34 S. W. 427, 31 L. R. A. 844; *City of Healdsburg v. Mulligan,* 113 Cal. 205, 45 Pac. 337, 33 L. R. A. 463; *City of Livingston v. Woods,* 20 Mont. 99, 49 Pac. 437; *State v. Gramm,* 7 Wyo. 329, 52 Pac. ·533, 40 L. R. A. 698.)

Richards & Haga and George M. Parsons, for Defendant.

Defendant alleges the fact to be that the act mentioned in ·the application for a writ of mandate herein, "An act for the ·care and keeping of moneys in the custody of the treasurer of the state of Idaho, and prescribing penalties," is unconstitutional and void and for the following reasons: 1. It is in contravention of section 16 of article 3 of the constitution of the state of Idaho, which provides that "Every act shall embrace but one subject and matters properly connected therewith, which ·subject shall be expressed in the title." 2. It is in contravention of section 13 of article 7 of the constitution of the state ·of Idaho, which provides that "No money shall be drawn from ·the treasury but in pursuance of appropriations made by law." 3. It is in contravention of the constitution of the state of Idaho, in that it assumes to abrogate the constitutional func-·tions of the state treasurer as the custodian of the state moneys· ·and to release him from responsibility therefor. 4. It is in ·contravention of the constitution of the state of Idaho, in that it assumes to invest such state board of deposits with power to usurp to itself functions imposed by the constitution upon ·other boards, and to restrict the constitutional powers and functions of boards created by said constitution, and to restrict the constitutional functions of this defendant, and to usurp powers and functions with which this defendant is invested by said constitution. 5. It is in contravention of section 3 of article 9 of the constitution of the state of Idaho, which provides that the public school fund of the state shall not be "used

or appropriated except as herein provided," and that "the state treasurer shall be the custodian oᶠ this fund." 6. It is in contravention of section 11 of article 9 of the constitution of the state of Idaho, which prescribes that "the permanent educational funds, other than the funds arising from the disposition of university lands belonging to the state, shall be loaned on first mortgage or improved farm lands within the state, or on state or United States bonds. "Whatever authority the law-making power possesses, the constitution will not permit legislature or citizens to be misled by embodying in any statute provisions which are not indicated by its title, to which all have a right to look for guidance in their searches after the law." (*Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, 55 Am. Rep. 693, 25 N. W. 372.) It seems from a careful comparison of the title to the act in question with the body of the act, wherein its purpose is revealed, that the title is clearly misleading. One of the purposes of section 16, article 3 of our constitution is to prevent the insertion of important provisions in the body of an act of which no intimation is given in the title. Could the legislature or the people have any knowledge or conception of the purposes of this act (excluding section 10) from a perusal, or even from the most critical study, of its title? If not, then they were misled as to the contents and purposes of this act, and the act would therefore fail to meet the requirements of our constitution. We cite, as particularly in point on this phase of the question, *Davies v. Board of Supervisors of Saganaw Co.,* 89 Mich. 295, 50 N. W. 862; *Commonwealth v. Brown,* 91 Va. 762, 21 N. E. 357, 28 L. R. A. 110; *Pioneer Irr. Dist. v. Bradbury,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295; *People v. Commissioners of Highways,* 53 Barb. 70 (cited with approval in *Callaghan v. Judge of Superior Court,* 59 Mich. 610, 26 N. W. 806); *Astor v. New York Arcade Ry. Co.,* 113 N. Y. 93, 20 N. E. 594, 2 L. R. A. 789; *State v. Young,* 47 Ind. 150; *Henderson v. London etc. Ins. Co.,* 135 Ind. 23, 41 Am. St. Rep. 410, 34 N. E. 565, 20 L. R. A. 827; *People v. Hall,* 8 Colo. 485, 9 Pac. 34; *People v. Parks,* 58 Cal. 624; *Commissioners of Rio Grande Co. v. Whelen,* 28 Colo. 435, 65 Pac.

38; *Lamar Canal Co. v. Amity L. & I. Co.,* 26 Colo. 370, 77 Am. St. Rep. 261, 58 Pac. 600; *City of Enterprise v. Smith,* 62 Kan. 815, 62 Pac. 324; *State v. Stone,* 24 Nev. 308, 53 Pac. 497; *Elk v. St. Paul Perm. Loan Co.,* 84 Minn. 245, 87 N. W. 844; *State v. Power,* 63 Neb. 496, 88 N. W. 769; *Weigel v. City of Hastings,* 29 Neb. 379, 45 N. W. 694; *Thomas v. Wabash etc. Ry. Co.,* 40 Fed. 126, 7 L. R. A. 145; *People v. Mellen,* 32 Ill. 182; *Lockport v. Gaylord,* 61 Ill. 276; *People v. Wright,* 70 Ill. 388; *People v. Deaconesses,* 71 Ill. 229; *Middleport v. Aetna etc. Ins. Co.,* 82 Ill. 565; *People v. Hazlewood,* 116 Ill. 327, 6 N. E. 480; *Leach v. People,* 122 Ill. 421, 12 N. E. 726; *Dolese v. Pierce,* 124 Ill. 140, 16 N. E. 218; *Dorsey's Appeal,* 72 Pa. St. 192; *Moses v. Mayor,* 52 Ala. 198; *Davis v. State,* 7 Md. 160, 61 Am. Dec. 331; *Brieswick v. Mayor,* 51 Ga. 639, 21 Am. Rep. 240; *McWherter v. Price,* 11 Ind. 201; *Grubbs v. State,* 24 Ind. 295; *Coutieri v. Mayor,* 44 N. J. L. 58; *Grover v. Trustees,* 45 N. J. L. 399; *State v. Steelman,* 66 N. J. L. 518, 49 Atl. 978; *Ryerson v. Utley,* 16 Mich. 269; *People v. Denahy,* 20 Mich. 349; *Anderson v. Hill,* 54 Mich. 477, 20 N. E. 549; *Durkee v. City of Janesville,* 26 Wis. 697; *White v. City of Lincoln,* 5 Neb. 505; *State v. Silver,* 9 Nev. 227; *Town of Fishkill v. Fishkill etc. Road Co.,* 22 Barb. 634; *People v. Allen,* 42 N. Y. 404; *People v. Fleming,* 7 Colo. 230, 3 Pac. 70; *Lacy v. Palmer,* 93 Va. 159, 57 Am. St. Rep. 795, 24 S. E. 930, 31 L. R. A. 825; *Commonwealth v. Hudusko* (1900), 10 Pa. Dist. Rep. 230; *State v. Craig* (Tenn. 1901), 64 S. W. 326; *Equitable Guarantee etc. Co. v. Donohoe,* 3 Penne. (Del) 191, 49 Atl. 372.) "In all the states having such a restrictive provision in which the question has arisen, except Ohio and California under her former constitution, the command has been held to be mandatory." (Sutherland on Statutory Construction, sec. 80.) "The title cannot be enlarged by construction when too narrow to cover all the provisions in the enacting part, nor can the purview be contracted by construction to fit the title." (Sutherland on Statutory Construction, sec. 87, citing the following: *Howland Coal & Iron Works v. Brown,* 13 Bush, 681; *In re Paul,* 94 N. Y. 497; *Matter of Sackett etc. Streets,* 74

N. Y. 95; *State v. Clinton*, 27 La. Ann. 40.) This defendant further contends that the office of state treasurer of the state of Idaho is a constitutional office declared to be and made such by the constitution of Idaho, and that this defendant, H. N. Coffin, as treasurer of this state, is a constitutional officer of the state of Idaho, and by virtue of such *status* possesses constitutional rights, obligations, powers and functions. (Idaho Const., art. 4, secs. 1, 19.) What are the constitutional rights obligations, powers and functions of the treasurer of this state? 1. He is the constitutional custodian of all funds belonging to the state of Idaho; 2. He has the power of disbursing such funds, in paying warrants legally drawn upon the state treasury; 3. He possesses such control of the state funds as is implied by his *status* as constitutional custodian thereof; 4. He is responsible for the safekeeping of such funds as such custodian; 5. He cannot be relieved of such responsibility and liability by statutory enactment only; 6. Such responsibility and liability cannot be transferred to another, or be replaced by a bond or collateral security, except where the funds in the custody of the treasurer are loaned in the manner provided by our constitution; 7. The state treasurer is the fiscal agent of the state under the constitution, and his functions as such agent cannot be restricted, interfered with or abrogated by any statutory enactment merely, nor can they be transferred to or assumed by any other officer or board deriving its authority from statute only. As to the custodianship of the state treasurer, section 7, article 7 of our state constitution declares that "All taxes levied for state purposes shall be paid into the state treasury," and section 13 of the same article provides that "No money shall be withdrawn from the treasury except by legislative appropriation." We cannot conceive of *custody* in the absence of and disconnected with *possession* and *control*. (*Roe v. Doe*, 32 Ga. 49.) What does custody mean? What are the duties of a custodian in the ordinary and usual sense of that term? Can we separate custody from possession and control? (*State v. Taylor*, 7 S. Dak. 533, 534, 64 N. W. 548.) The only section of the act in question which comes properly under the title is

·ŝection 10.    It is not contended that this section is obnoxious to ·
· any constitutional provision, and it might therefore possibly be
·held that it should stand, and, together with the repealing sec-
·tion, constitute a piece of valid legislation.    The difficulty is
in determining whether the good and bad parts of the statute
are capable of being separated within the meaning of this rule.
If a statute attempts to accomplish two or more objects, and is
void in one, it may still be in every respect complete and valid
·as to the other.    But if its purpose is to accomplish a single
·object only, and some of its provisions are void, the whole must
·fall.    (*Warren v. Charlestown,* 2 Gray, 84; *Commonwealth v.
Potts,* 79 Pa. St. 164; *Lathrop v. Mills,* 19 Cal. 514; *Jones v.
Jones,* 104 N. Y. 234, 10 N. E. 269; *Black v. Trower,* 79 Va.
123; *Trademark Cases,* 100 U. S. 82, 25 L. ed. 550; *Darby v.
City of Wilmington,* 76 N. C. 133; *State v. Goodwin,* 123 N. C.
697, 31 S. E. 221; *Eckhart v. State,* 5 W. Va. 515; *State v.
Sinks,* 42 Ohio St. 345; *People ex rel. v. Cooper,* 83 Ill. 595;
Hinze v. People,* 92 Ill. 406, 424; *State v. Pugh,* 43 Ohio St.
98, 1 N. E. 439; *Rader v. Township of Union,* 39 N. J. L. 509;
Flanagan v. Plainfield,* 44 N. J. L. 118, 124; *State v. Commis-
sioners,* 38 N. J. L. 320; *Childs v. Shower,* 18 Iowa, 261; *Cen-
tral etc. R. R. Co. v. Atchison etc. R. R. Co.,* 28 Kan. 453;
Moore v. New Orleans,* 32 La. Ann. 726.)

Per CURIAM.—This is an application for a writ of mandate
to H. N. Coffin, treasurer of the state of Idaho.    It involves the
constitutionality of an act of the legislature entitled, "An act
to provide for the care and keeping of moneys in the custody of
the treasurer of the state of Idaho, and prescribing penalties,"
approved the 4th of March, 1903, Session Laws of 1903, page
375.    The board of deposits created by said act acting under
and in pursuance of the authority vested in it, considered the
application of the Boise City National Bank for designation as
a state depository, and from an investigation and examination
of its financial condition and resources found that it was sol-
vent, and thereupon ordered that said bank be designated as a
state depository and allotted to it the sum of $1,000 upon its
compliance with the conditions required of depositories under

and by virtue of the provisions of said act. Thereafter said board found that said bank had complied with the terms of said act and thereupon notified said bank of the board's action in designating it as a state depository, and thereafter directed said state treasurer to forthwith transmit to said depository the sum of $1,000. The defendant, as state treasurer, refused to obey said order and refused to transmit said sum of money so allotted to said bank. Said board thereupon applied to this court for an alternative writ of mandate to compel said treasurer to comply with the order of said board, or to show cause why he should not do so. The writ was issued as prayed for and defendant filed his answer to said application. Said answer raises only questions of law. The answer puts in issue the validity of said act of the legislature and specifies many reasons why said writ should not be made peremptory, among which specifications are the following: 1. Because under the provisions of the said constitution he is the legal custodian of all state funds, and if he should comply with the directions of said board he would be personally liable on his official bond in case of a loss of such public funds; 2. That the order does not indicate from which of said funds he shall transmit said money; 3. That said board is not a constitutional board or a board authorized to be created by the constitution and has no legal authority or right to disburse or direct the disbursement of the moneys belonging to the state; 4. That the order does not indicate from which of said funds he shall transmit said money; 5. That the defendant is not a member of said board; 6. That he is the custodian of the public school fund, and that if he transmits said fund it will be contrary to the law, as it would be a loaning of said money; 7. That the act takes the funds from his custody without his consent and contrary to the provisions of law; 8. That the act contravenes the constitution in this, that the subject matter of the act is not expressed in the title; 9. That no money can be drawn from the treasury except in pursuance of an appropriation made by law; 10. That it interferes with his custody of the public school funds.

The first question discussed in the brief of counsel is, Is the subject matter of the act in question expressed in the title?

Said title is as follows: "An act to provide for the care and keeping of moneys in the custody of the treasurer of the state of Idaho, and prescribing penalties." In order to determine this question and what the real subject of this act is, and to ascertain whether or not said subject is expressed in the title, we will consider the act section by section. Said act is as follows:

"An Act to Provide for the Care and Keeping of Moneys in the Custody of the Treasurer of the State of Idaho, and Prescribing Penalties.

"Be it enacted by the Legislature of the State of Idaho:

"Section 1. The Governor, Attorney General and State Auditor are hereby constituted a Board of Deposits, of which the Governor shall be·chairman and the State Auditor, secretary. A record of the proceedings of said board shall be·kept by the secretary, in the books provided for the purpose, and a transcript of such record, or any portion thereof, shall be admissible in evidence in all courts of this State.

"Regular meetings of said board shall be held at the State capitol building at such times as said board shall by rule prescribe, and said board may hold, from time to time, such adjourned or special meetings as the business before it may require, such special meetings to be called by the Governor or any two members of said board by written notice filed with the Auditor and served upon the other member or members of said board, if within the state, at least twenty-four hours prior to said meeting: Provided, That when all members of said board are present at any meeting due notice thereof shall be deemed to have been given.

"Sec. 2. Any National or State banking corporation, resident and doing business within this state, complying with all the conditions and requirements of this act, may, upon being so designated by said board of deposits, become a state depository.

"Sec. 3. Every such banking corporation before it be permitted to receive on deposit any state moneys shall file with the State Treasurer a good and sufficient surety bond to the

State of Idaho, to be approved by said board, in some approved guaranty and surety company, authorized to do business in this State, which bond shall be conditioned upon the payment to the State of Idaho, upon the order or demand of the State Treasurer thereof, free of exchange, at any time and place, designated by said Treasurer, of so much or all the state moneys on deposit with said banking corporation, together with accumulated interest thereon at the rate fixed by said board,—or in lieu of such bond, such banking corporation shall deposit with the Treasurer, under such rules and regulations as may be established by said Board of Deposits, not less than one dollar and ten cents in value at the then market value of any of the following securities, to be approved by said board, for each dollar of the State moneys to be thereafter deposited with said banking corporation, to wit:

"Bonds of the State of Idaho and those for the payment of which it is ultimately liable; the bonds of the several counties, cities, towns, villages, irrigation and school districts of this state; the bonds of the United States; the warrants of the State of Idaho and of the several counties thereof. No such bonds or other collateral shall be approved by the board for more than its par value, nor approved if its then market value is less than 95 per cent. of its par value, nor if there has been a default within five years in the payment of the principal or interest of any obligation issued by the same payer. The securities deposited under the provisions of this section may be withdrawn from time to time when in excess of the requirements, but the total amount of such collateral securities shall at no time be less than $1.10 for each dollar of State moneys so held on deposit by the banking corporation given such security.

"Sec. 4. The Board of Deposits shall not approve the bond of any such banking corporation until fully satisfied that said bond is good and sufficient to indemnify the state against loss and that said corporation is solvent and has unimpaired, the paid-up capital claimed by it; and said board may at any time require any such depository to furnish new or additional bond.

or security of the kind hereinbefore prescribed and may also revoke the designation of such depository and immediately upon such revocation such corporation shall cease to be a State Depository and all moneys with accumulated interest on deposit therein shall be immediately transmitted to the said treasurer by such corporation at its own risk, and without charge to the State.

"Sec. 5.    The Board of Deposits, by one or more of its number, or by some qualified person designated by it, shall, before designating a depository, make thorough examination and investigation into the condition of any banking corporation which may make application to become a State Depository, and thereafter, as it deems necessary, make such investigation and examination of the condition and resources of the said corporation as it may deem necessary or advisable, and any such banking corporation which shall fail or refuse to afford said Board of Deposits or the person designated by it, every facility for ascertaining its financial condition and resources, shall not be designated as a depository and, if previously designated, such designation shall be forthwith revoked by said board.

"Sec. 6.    Every such State Depository shall, on the fifth fix the rate of interest to be paid by said depositories upon all State moneys so deposited with them, which rate of interest shall be the highest obtainable: Provided, That such rate of interest may differ for different depositories, but in no case shall be less than two per cent. per annum on daily balances. The amount on deposit in any designated depository shall not, at any time, exceed ninety per cent. of its paid-up capital and permanent surplus, nor more than the penalty of the surety bond furnished by it.

"Sec. 7.    In case two or more banking corporations shall offer the same and highest rate of interest upon State moneys to be so deposited with them, the Board of Deposits may designate the one to receive such deposits, or may apportion the amount among such banking corporations.

"Sec. 8.    Every such State Depository shall, on the fifth day of each month, and oftener if required by said board, file with the State Auditor and State Treasurer, in duplicate, a

statement, verified by the oath of the president, vice-president or cashier of said banking corporation, showing the amount of State moneys on deposit with it at the close of business on each day of the month preceding, together with a statement of the interest accumulated therein, and within five days after the first day of January, April, July, and October in each year, shall make and file with the State Auditor and State Treasurer, in duplicate, a full statement of all State moneys deposited with it during the preceding quarter, together with a statement of accumulated interest for such quarter, computed on daily balances, and such interest shall thereupon be added to and form a part of the deposit balance from the first day of each quarter, and the interest shown by such statement to have been earned shall thereupon be apportioned by the State Treasurer to the several funds in proportion to the amount earned by each.

"Sec. 9. All offers of interest upon deposits of State moneys, shall be in writing, addressed to the Board of Deposits, and filed with the State Auditor. No such offer shall be given publicity until the designation of the depository or depositories, has been made, whereupon said board shall make public the name or names and location or locations of the several designated depositories, the sum on deposit in each, and the rate of interest such deposits are to bear.

"Sec. 10. The Board of Trustees of the capitol building shall, as soon as practicable, provide a fire and burglar proof vault and burglar proof safe of sufficient size and suited to the requirements of the State Treasurer in the care and safekeeping of the State moneys, and there is hereby appropriated for such purpose out of any funds in the treasury, not otherwise appropriated, the sum of seven thousand five hundred dollars. From and after the completion of said vault and the procuring of said safe, all State moneys in the custody of the State Treasurer, not otherwise deposited as in this act provided, shall be kept in said vault and safe and in no other place. A violation of this section shall subject the State Treasurer, upon conviction thereof, to pay a fine of not less than five thousand nor more than ten thousand dollars, or by imprisonment in the

State prison for a period of not less than one nor more than ten years, or by both such fine and imprisonment.

"Sec. 11. Whenever the Board of Deposits shall have designated a depository or depositories and all the conditions required of such depository or depositories shall have been complied with, the State Auditor shall notify, in writing, the State Treasurer of the action of said board, giving the name or names, and location or locations of such depository or depositories, and the amount of deposit allotted by said board to each and the rate of interest which said deposit or deposits are to bear: And it is hereby made the duty of the State Treasurer to forthwith transmit to such depository or depositories so designated the amount of State moneys allotted to each, the expense of insuring and transmitting said moneys to be paid by such depository or depositories in advance of such transmission, and any and all sums so deposited in such depositories shall be deemed to be in the State Treasury, and such Treasurer shall not be liable for any loss of such deposits, or any part or portion thereof, resulting from the failure or default of any such depository, not resulting from the fault or neglect of the Treasurer or his subordinates.

"Sec. 12. As funds, from time to time, shall be required by the State Treasurer to meet the lawful demands upon the treasury, or as funds shall be required for investment under the provisions of sections 3 and 11 of Article 9 of the Constitution or of the laws passed pursuant thereto, he shall draw upon such depository or depositories and in such amount or amounts as shall be designated by the Board of Deposits.

"In designating depositories, banking corporations of this State shall be given preference over those without the State, and no State moneys shall be deposited under the provisions of this act, in any depositories out of this State so long as there be banking corporations within the State offering to pay the minimum rate of interest provided by this act and otherwise to comply with all the provisions thereof, but any portion of said State moneys, available for deposit in such depositories, upon which the minimum rate of interest established has not been offered by any banking corporation of this State may be

deposited by said Board of Deposits in some bank or banks, or trust companies each having a paid-up capital of not less than one million dollars in either of the cities of Chicago or New York or both of them, at interest as. computed as hereinbefore in this act provided and subject to all the other provisions of this act, except that no bond or collateral security shall be required of such banks or trust companies, and the interest' arising upon such deposits shall be apportioned by the State. Treasurer as herein provided.

"Sec. 13. All acts and parts of acts in conflict herewith are hereby repealed.

"Sec. 14. An emergency existing therefor, this act shall take effect and be in force from and after its passage.

"Approved the 4th day of March, 1903."

An analysis of the act as above set out will disclose that the several sections thereof provide in substance as follows:

Section 1 provides for the creation of a board to be called the "Board of Deposits."

Section 2 authorizes or creates an institution to be known as a "State Depository."

Sections 3, 4, and 5 prescribe the character, conditions and provisions of bonds or other security to be given by such depositories as a condition precedent to receiving public moneys deposited; and prescribe the powers and duties of the board in examining into the financial condition of such banks and institutions as apply to be designated as such depositories.

Section 6 authorizes the establishing of a rate of interest by the board to be paid the state for the use of such moneys by said depositories, and prescribes the maximum sum of money which can be deposited with any one banking institution.

Section 7 directs the apportioning of the public funds among two or more banks applying for such moneys.

The eighth section provides for monthly and quarterly statements by depositories of amount of money on deposit, together with accrued interest thereon at the close of business on each day of the month.

Section 9 prescribes the manner of making offers to pay interest on the public funds and imposes secrecy on the board as

to the character of the bid, the person bidding and the rate of interest offered until after the designation of the depository or depositories is made, and for the making public of the names and locations of the depositories designated and rate of interest to be paid by each after such designation.

Section 10 directs the board of trustees of the capitol building, which consists of the governor, Secretary of State and treasurer, to provide a fire and burglar proof vault and safe for the use of the state treasurer, and appropriates the sum of seven thousand five hundred dollars for such purpose and directs the state treasurer to keep the moneys in his hands not deposited under the provisions of the act in such safe and vault, and provides heavy penalties for a failure so to do.

Section 11 provides that upon notice from the board of the amount awarded to any depository and the name and location of such depository, and that such depository has complied with the requirements of the law, the treasurer shall thereupon deposit in such bank the amount authorized by the order of the board; and it will be observed that this section closes by saying: "all sums so deposited in such depositories shall be *deemed* to be in the state treasury, and such treasurer shall not be liable for any loss of such deposits or any part or portion thereof resulting from the failure or default of any such depository not resulting from the fault or neglect of the treasurer or his subordinates."

Section 12 provides that as funds shall be required from time to time to meet the demands upon the treasury, that the treasurer "shall draw upon said depository or depositories and in such amount or amounts as shall be designated by the board of deposits." It is there further provided that banking institutions of the state shall have preference in designating as state depositories; but that in case all the funds are not applied for by the banks of this state, that the same may be deposited in any bank either in New York or Chicago having a capital of one million dollars, and that such institutions shall not be required to give any bond or security whatever for the use of such funds.

This court approaches the consideration of the question here presented impressed with the spirit of interpretation announced as being applicable in the consideration of a like question in case of *Pioneer Irr. Dist. v. Bradbury* (Idaho), 68 Pac. 295. There this court in discussing the sufficiency of the title of an act when tested by the provisions of section 16, article 3 of the constitution announced the following principle in the syllabus to the case: "The objection should be grave, and the conflict between the constitution and statute palpable, before the judiciary should hold a legislative enactment unconstitutional upon the sole ground that it embraces more than one subject. However numerous the provisions of an act may be, if they can be, by fair intendment, considered as falling within the subject matter legislated upon in such act, or necessary as ends and means to the attainment of such subject, the act will not be in conflict with said constitutional provision."

This court is now, as it was when that case was written, impressed with the importance of giving force and effect to every legislative enactment which can reasonably be said to come within the legislative power as prescribed and limited by the provisions of the constitution. We are in entire accord with the language used by Mr. Chief Justice Bartholomew in *State v. Nomland*, 3 N. Dak. 427, 44 Am. St. Rep. 572, 57 N. W. 86, cited by both plaintiff and defendant, wherein he said: "Refinement upon this constitutional provision and the enforcement of a narrow construction would greatly embarrass the legislature and nullify a large percentage of most beneficial legislation. This court should be careful and destroy no legislation sanctioned by the law-making branch of the state government, unless such legislation be a clear violation of the constitutional requirements. But we have no duty higher or more sacred than is the duty to preserve in all its integrity every provision in the fundamental law of the state."

The provisions of the constitution are applicable alike to the legislative, executive and judicial departments of the state government, and by its terms it has imposed upon the courts the duty of determining when and in what cases its provisions have been violated and of enforcing an observance of its mandates.

Section 16 of article 3 of the state constitution provides that "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title." This provision is identical with that found in the constitutions of most of the states of the Union, and an examination of the authorities will at once disclose the fact that the principles to be applied in determining whether or not a title sufficiently contains the subject of the bill, and as to whether or not the bill contains more than one subject, as contemplated in this constitutional provision, have been repeatedly discussed and announced by the courts. The courts seem to have uniformly endeavored to fully apply a uniform principle of interpretation and construction, and it may be said that there is no diversity of authority on that question. The difficulty has arisen in all the courts, as it does here, of applying that principle to the title used in any particular instance and the class and character of legislation the lawmakers had in view. We have no doubt about what the rule is, but its application is what gives us the greatest concern. Judge Cooley, a recognized authority upon this subject, in his work on Constitutional Limitations (sixth edition), at page 178, says: "As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the constitution has made the title the conclusive index to the legislative intent as to what shall be operative; it is no answer to say that the title might have been more comprehensive—in fact the legislature have not seen fit to make it so."

The supreme court of Minnesota in *State v. Cassidy,* 22 Minn. 324, 21 Am. Rep. 765, after reviewing a great number of authorities on this subject, concludes its review with the following very apt announcement: "Under such rule, as is exemplified by these cases, if the legislature is fairly apprised of the

general character of an enactment by the subject as expressed in its title, and all its provisions have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and as might reasonably be looked for in a measure of such character, then the requirement of the constitution is complied with."

· It seems to have been generally recognized by the authorities as the intention of the framers of such a constitutional provision to require a title sufficiently definite and comprehensive as to indicate to one reading it the general scope and purpose of the legislation intended by the act, and that if the title be sufficient for that purpose it will be held as including all necessary and incidental legislation necessary to make the general purpose of the act operative.

As will be seen, Judge Cooley and many of the ablest authorities use the word "index," and say the title is "the conclusive index to the legislative intention." The framers of the constitution evidently meant that the title to the act should indicate, both to the lawmaker and the citizen, the general scope and purpose of the legislation intended, and that such title should put the citizen upon notice of the proposed legislation.

Under our form of government every citizen has a right to be heard upon any and all questions of proposed legislation. The right of petition is recognized and is often found to be one of the greatest safeguards against the passage of unwise legislation as well as a means of securing beneficial laws.

With the foregoing principles in view, let us consider the title to the act in question. It is clear to our minds that the fundamental purpose and object of the act before us was to secure interest upon the public funds, and provide for the use of those funds by such institutions as might be designated by the board of deposits as state depositories. All other legislation found within the act is simply the instrumentalities for the carrying into effect and operation the main purpose of the bill. The creation of the board, the designation of depositories, the taking of security, the examination of the financial condition of the depositories, the making of statements by such de-

positories, and other similar provisions of the act were simply; means of carrying into effect- the real purpose and object of the act. The public funds under the provision of this act are to be deposited without- and beyond the personal reach and control of the state treasurer. The legislature recognizing and appreciating that fact took the precaution to provide in sec-- tion 11 that any funds lost, while in such depositories and be- yond the immediate possession of the treasurer, without his fault should incur no liability on the treasurer. In closing that section they undertook to do something which we think is be- yond legislative control or discretion, when they state that moneys out of the state treasury and "deposited in such de- positories shall be *deemed* to be in the state treasury." We do not think the legislature can reverse the meaning of the English language and say that "out" means "in." The title says that the act is "to provide for the care and keeping of moneys *in the custody* of the treasurer," but the act itself pro- vides for the care and keeping of the money *out of the custody* of the state treasurer. It is true the legislature appreciating the difference between the title and the act said that the money out of his hands should be "deemed" to be in his hands. We think the language of Mr. Justice Campbell in *Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, 55 Am. Rep. 693, 25 N. W. 373, in speaking for the supreme court of Michigan, is in point upon this phase of the question, where he said : "The pur- pose of the statute, so far as it is lawful, must be determined by its title, and it is not competent to use one title and explain in the body of the act that it means something else. The con- stitutional rule requiring the title to contain the object of the act would be a farce if there were any power in the legislature to give new meanings to language."

It is ably and earnestly argued by counsel for plaintiff that the public funds, although they may be deposited in such de- positories under the provisions of this act, are still, in con- templation of law as embodied in this bill, within the custody and keeping of the state treasurer. As we gather from all the latest and best lexicographers, "custody" means a keeping, guarding, care, watch, inspection, preservation or security of

a thing, and carries with it the idea of the thing being within the immediate personal care and control of the person to whose "custody" it is subjected.

The question here would naturally arise, Could the legislature or the citizen reasonably gather the purpose and object of this act as found in the bill from its title? Would the title put a person reading the same on notice of the contents of the act? We think it would not. It would be quite a sweep of imagination to gather from the language: "An act to provide for the care and keeping of moneys in the custody of the treasurer of the state of Idaho and prescribing penalties," the vision of a law authorizing banking institutions both within and without the state to become depositories of the public funds, paying interest thereon, and using such moneys in trade and commerce and the subjecting them to the order and direction of the board of deposits of which the treasurer is not a member, and the entire removal of the funds without his custody and control. We think that the citizen, even though he might be skilled in the making and interpretation of laws, would be justified in concluding from this title that the act over which it was hovering was some kind of a provision providing aids and safeguards for the assistance of the treasurer in keeping and caring for the public funds. It would be reasonable to look for a law under this title along the lines of and in harmony with the provisions of section 10 of the act, and indeed we think that section comes clearly within the provisions of the title, but the act stripped of all the other sections would leave this section of no force or vitality.

Counsel for plaintiff cite us to *Hopkins v. Scott,* 38 Neb. 661, 57 N. W. 391, and *Seay v. Bank,* 66 Ga. 609, as sustaining titles to depository laws similar to the one here enacted. An examination of chapter 50, Session Laws of 1891, of the state of Nebraska, referred to in *Hopkins v. Scott,* will disclose an entirely different title to that act from the one under consideration. There the title was; "An act to provide for the depositing of the state and county funds in banks." There can be no doubt about the purpose of the title to the Nebraska act, and there is no similarity between the title to that act and the title

to the act here under consideration. In *Seay v. Bank* the supreme court of Georgia held that an act entitled "An act to establish state depositories in the city of Atlanta (and other cities named) and to prescribe their duties and liabilities," was sufficiently broad to cover a provision in the body of the act for the giving of bonds by the depositories to be enforced in case of default by such depositories. Here again it will be seen was a title having no similarity whatever to the one under consideration. The trouble with this act is that the title and the act do not fit each other. The title indicates one thing while the bill attempts to write an entirely different thing into law. This is aptly illustrated by the supreme court of New York in *People v. Commissioners of Highways,* 53 Barb. 73, where the court said: "The body of the bill expresses its object; the title of the bill disguises and conceals it. No person from reading its title would guess its object." This language is quoted approvingly by Mr. Justice Sherwood in *Callaghan v. Superior Court,* 59 Mich. 610, 26 N. W. 808. In *State v. Nomland, supra,* the title of the act was, "An act creating the office of the board of state auditors and prescribing the duties thereof." The supreme court of North Dakota held this title insufficient to sustain the act, and in the discussion of the scope of the title and the purpose of the act, the court said: "Generally speaking, the subject was the state funds; more specifically it was the security and augmentation of those funds; but neither generally nor specifically is the subject expressed in the title—'An act creating the office of the board of state auditors and prescribing the duties thereof.' Was the act passed for the purpose of creating that board? Was that the subject—the object —of the act? Clearly not. The board was simply an instrumentality for the accomplishment of some purpose, but what purpose no human foresight could determine from that title. . . . . We have held that, when the subject of the act was properly expressed in its title, the act might create the means and instrumentalities required for its own accomplishment, but it has never been held, under this provision, that where the title announced only the instrumentality, the act itself might announce the subject upon which the instrumentality was expected to operate."

As before suggested, there is no conflict between the authori-ties cited by plaintiff and those cited by defendant as to the abstract principle to be applied in these cases, and for that reason we do not even undertake to discuss or analyze any of them; indeed, such an effort would be useless here. We cite the following as some of the many authorities laying down the general doctrine in this class of cases, and where titles to legislative acts have been held invalid: *State v. Nomland,* 3 N. Dak. 427, 44 Am. St. Rep. 572, 57 N. W. 86; *State v. Cassidy,* 22 Minn. 324, 21 Am. Rep. 765; *Northwestern Mfg. Co. v. Chambers,* 58 Mich. 381, 55 Am. Rep. 693, 25 N. W. 373; *Callaghan v. Superior Court,* 59 Mich. 610, 26 N. W. 808; *People v. Commissioners of Highways,* 53 Barb. 73; *Pioneer Irr. Dist. v. Bradbury,* 8 Idaho, 310, 101 Am. St. Rep. 201, 68 Pac. 295; *Holmberg v. Jones,* 7 Idaho, 572, 65 Pac. 563; *Dorsey's Appeal,* 72 Pa. St. 192; *Grubbs v. State,* 24 Ind. 296; *Prothro v. Orr,* 12 Ga. 36; *Astor v. New York Arcade Ry. Co.,* 113 N. Y. 93, 20 N. E. 594, 2 L. R. A. 789; *Boom Co. v. Prince,* 34 Minn. 79, 24 N. W. 361; *State v. Kinsella,* 14 Minn. 524; *Davies v. Board of Supervisors,* 89 Mich. 295, 50 N. W. 862; *Dolese v. Pierce,* 124 Ill. 140, 16 N. E. 218.

However much we may personally and individually regret the necessity which impels us to hold the act in question invalid and void, we are nevertheless impressed with a sense of duty under the express mandates of the constitution, and therefore hold that the title to the act before us is not sufficient and that the act is void. The conclusions reached as to the sufficiency of the title to the act makes it unnecessary for us to consider any of the other questions raised in the proceeding. The alternative writ of mandate is quashed and the petition denied. No costs awarded.