## In re C. H. EDWARDS.

[266 Pac. 665.]

ACT TO ORGANIZE IDAHO STATE BAR—CONSTITUTIONAL LAW—JUDICIAL POWERS—STATUTES—TITLE OF—EFFECT OF PARTIAL INVALIDITY—ATTORNEYS—RULES AND REGULATIONS GOVERNING—DISBARMENT—RIGHT TO PRACTICE LAW.

1.  Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, under which the board is without perpetual succession, without right to receive and grant property in its name, or to purchase or hold property, real or personal, or to have a common seal, do not create a corporation by special act, in violation of Const., art. 3, sec. 19, or art. 11, sec. 2.

2.  Before a legislative act is held unconstitutional, it should clearly appear that it infringes some provision of the constitution.

3.  A doubt as to the constitutionality of an act should be resolved in its favor, and it is the duty of the court to adopt such a construction as will sustain the enactment, if its language will permit.

4.  Laws 1923, chap. 211, sec. 8, so far as it gives board of commissioners of Idaho State Bar power to provide for the discipline of its officers and members of its committees, in the event of refusal, neglect, failure or corrupt or wrongful performance of their respective duties, and to discipline, reprimand, suspend or disbar attorneys, *held* void as conferring judicial powers on the board.

Points Decided.

5. Since no power can be conferred on board of commissioners of the Idaho State Bar to administer discipline, including suspension or disbarment of attorneys from practice, a committee appointed by the board to investigate complaints and charges would also be without such powers, which are judicial and not administrative.

6. Provision of Laws 1923, chap. 211, sec. 11, authorizing board of commissioners of Idaho State Bar to appoint committees to investigate charges against members of the bar, and report their findings to the board, *held* valid.

7. Where certain provisions of an act are invalid and others valid, the latter are not affected by the void provisions, unless they are plainly dependent on each other, and so inseparably connected that they cannot be divided without defeating the object of the act.

8. Valid provisions of Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and providing for investigation of charges against members of the bar, and reporting findings, conclusions and recommendations to supreme court, *held,* not so dependent on invalid provisions thereof, or so inseparably connected therewith, that they cannot be separated therefrom and the act upheld.

9. Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and providing for investigation and hearing of charges against members of the bar and review thereof before board, subject to final review and disposition by the supreme court, *held* not violative of Const., art. 1, sec. 13, providing that no person shall be deprived of life, liberty or property without due process of law.

10. Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and providing for investigation and hearing of charges against members of the bar and review thereof before board, subject to final review and disposition by the supreme court, *held* not invalid under Const., art. 1, sec. 18, as not providing for hearing before an impartial body.

11. The supreme court has inherent power to adopt rules and regulations prescribing the fitness and qualifications of persons seeking to practice law before the courts of the state and to ultimately determine whether, under the statutes or rules promulgated by it, persons possess the necessary qualifications, or are persons of good character, with the additional inherent power to suspend or disbar an attorney for sufficient cause, independent of statutes.

12. Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and

providing for investigation and hearing of charges against members of the bar and review thereof before board, subject to final review and disposition by the supreme court, *held* not to delegate legislative and judicial powers to supreme court and to the board, in violation of Const., art. 2, sec. 1.

13. Laws 1923, chap. 211, p. 343, as amended by Laws 1925, chaps. 89, 90, pp. 124, 128, creating board of commissioners of Idaho State Bar, and providing for investigation and hearing of charges against members of the bar and review thereof before board, subject to final review and disposition by the supreme court, *held* not invalid under Const., art. 3, sec. 16, as relating to subject not embraced in the titles nor as embracing more than one subject.

14. Laws 1925, chap. 89, amending Laws 1923, chap. 211, and in its title reciting that it is an act amending certain sections of the original act, and by reference to title of original act fully setting out subjects embraced therein and in the amendatory act, *held* not violative of Const., art. 3, sec. 16, as against contention that no subject is embraced within the title, as required by the constitution.

15. The object of the title to an act is to give a general statement of the subject matter, and the title of an amendatory act is sufficient if in such title attention is called to the original act, the title of which fully embraces the subject matter of the act, purpose of Const., art. 3, sec. 16, requiring subject to be embraced within title, being to prevent deception of members of legislature and people.

16. Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and providing for investigation and hearing of charges against members of the bar and review thereof before board, subject to final review and disposition by the supreme court, *held* not invalid as creating a court other than those provided for in Const., art. 5, sec. 2, nor as providing method of procedure in supreme court and depriving supreme court of its jurisdiction and powers, in violation of art. 5, sec. 13.

17. Laws 1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, creating board of commissioners of Idaho State Bar, and providing for payment of license moneys derived thereunder into state treasury, to be disbursed under jurisdiction and control of state board of examiners and state auditor, *held* not void as appropriation of private funds for private use.

18. Trial of an attorney before trial committee, appointed by board of commissioners of Idaho State Bar on charges under Laws

Argument for Petitioner.

1923, chap. 211, as amended by Laws 1925, chaps. 89, 90, can only be had on charges contained in the information or rule.

19. Where the offense charged against an attorney consists of a violation of professional duty, the court will entertain disbarment proceedings, independent of any prosecution or conviction.

20. The right to practice law is not a "property right," but a "privilege" or "franchise."

On petition of C. H. Edwards for review of disbarment proceedings before the Board of Commissioners of the Idaho State Bar. Proceeding *dismissed.*

S. L. Tipton, for Petitioner.

The said chapters of law violate the provisions of Const., sec. 13, art. 1, in this, that said law denies to the petitioner herein due process of law. (*Abrams v. Jones,* 35 Ida. 532, 207 Pac. 724; *May v. District Court,* 34 Ida. 205, 200 Pac. 115; *Grand* v. *Stahl,* 11 A. L. R. 185, note; *In re Cameron,* 126 Tenn. 614, 151 S. W. 64–67.)

---

Publisher's Note.

2. See 25 R. C. L. 1000.

3. See 25 R. C. L. 999.

7. Effect of partial invalidity of statute, see notes in Ann. Cas. 1916D, 9, 104, 127, 136, 139, 158, 171; Ann. Cas. 1918D, 1123. See, also, 6 R. C. L. 121.

11. See 2 R. C. L. 942.

19. Disbarment of attorneys for criminal acts in advance of their conviction, see notes in 2 Am. St. 852; 114 Am. St. 839; 8 Ann. Cas. 847. See, also, 2 R. C. L. 110.

20. Constitutional privilege to practice law, see note in 15 L. R. A. 581. See, also, 20 R. C. L. 940.

Attorney and Client, 6 C. J., sec. 11, p. 569, n. 29, 30; sec. 17, p. 572, n. 71; sec. 37, p. 580, n. 55, p. 581, n. 56, 58; sec. 38, p. 583, n. 76; sec. 43, p. 587, n. 32; sec. 64, p. 603, n. 20; sec. 69, p. 605, n. 51.

Constitutional Law, 12 C. J., sec. 220, p. 787, n. 96; sec. 222, p. 795, n. 27, 33; sec. 259, p. 816, n. 93; sec. 260, p. 817, n. 4; sec. 330, p. 847, n. 99; sec. 346, p. 853, n. 15; sec. 408, p. 902, n. 33; sec. 999, p. 1224, n. 25; sec. 1103, p. 1289, n. 51.

Eminent Domain, 20 C. J., sec. 34, p. 546, n. 26.

Statutes, 36 Cyc., p. 976, n. 27, p. 999, n. 15, p. 1022, n. 96, p. 1028, n. 24, p. 1030, n. 30, p. 1045, n. 5.

The said chapters of law violate Const., sec. 1, art. 2, in this, that said laws delegate to the supreme court legislative power and also said laws delegate to the board of commissioners of the Idaho State Bar both legislative and judicial powers. (*Speere v. Stephenson,* 16 Ida. 707, 102 Pac. 365; *State v. Nelson,* 36 Ida. 713, 720, 213 Pac. 358; *Idaho Power & Light Co. v. Blomquist,* 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083.)

The said chapters of law violate Const., sec. 16, art. 3, in this, that the subject is not embraced in the title of the act, and said acts, and each of them, embrace more than one subject, except chap. 89, Sess. Laws 1925, p. 124, which said chapter has no subject embraced in the title as required by the constitution. (*Jackson v. Gallet,* 39 Ida. 382, 228 Pac. 1068; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962, and cases there cited; *Hailey v. State Historical Soc.,* 25 Ida. 165, 136 Pac. 212; *Cohn v. Kingsley,* 5 Ida. 416, 49 Pac. 985, 38 L. R. A. 74; *Pioneer Irr. District v. Bradley,* 8 Ida. 310, 68 Pac. 295; *Rader v. Township of Union County,* 39 N. J. 509; *State v. Bailey,* 157 Ind. 326, 61 N. E. 730, 59 L. R. A. 435; *Clark v. Wallace Co.,* 54 Kan. 634, 39 Pac. 225.)

The said chapters of law violate Const., sec. 19, art. 3, and Const., sec. 2, art. 11, in this, that said law creates a corporation by special act of the legislature; and particularly does Sess. Laws 1925, chaps. 89 and 90, violate Const., sec. 2, art. 11, in that said two chapters do amend, or attempt to amend, by special law, the charter of a corporation, which charter and corporation were created by special act of the legislature known as Sess. Laws 1923, chap. 211. (Const., sec. 16, art. 11, defining "Corporations"; *Jackson v. Gallet, supra; Spotswood v. Morris,* 12 Ida. 360, 85 Pac. 1094, 6 L. R. A., N. S., 665; *State v. Cosgrove,* 36 Ida. 278, 210 Pac. 393.)

The said chapters of law violate the provisions of Const., sec. 2, art. 5, in this, that they create a court other than those provided for in said Const., sec. 2, art. 5.

"Court" is defined as "a place where justice is judiciously administered." Also it is defined as "a tribunal charged,

as a substantive duty, with the exercise of judicial power.'' (See ''Courts,'' 2 Words and Phrases, p. 1672; *State v. Stephenson,* 16 Ida. 707, 102 Pac. 365.)

The said chapters of law violate Const., sec. 13, art. 5, in that said law provides a method of procedure in the supreme court and deprives the supreme court of its jurisdiction and powers. (*State v. Noble,* 118 Ind. 350, 10 Am. St. 143, 21 N. E. 244, 4 L. R. A. 101, 106.)

Said law is void in that it takes private funds and appropriates the same to private use. (*State v. Cosgrove, supra; Spotswood v. Morris, supra.*)

James F. Ailshie, Jr., and E. J. Frawley, for Prosecuting Committee of Idaho State Bar.

A court authorized to admit an attorney has inherent jurisdiction to suspend or disbar him for sufficient cause, and such jurisdiction does not necessarily depend upon any express constitutional provision or statutory enactment. (6 C. J., 580, 581, par. 37; *In re Lambuth,* 18 Wash. 478, 51 Pac. 1071; *In re Bruen,* 102 Wash. 472, 172 Pac. 1152; *In re Mills,* 104 Wash. 278, 176 Pac. 556; *In re Ward,* 106 Wash. 147, 179 Pac. 76; *McVicar v. State Board of Law Examiners,* 6 Fed. (2d) 33; *In re Chapelle,* 71 Cal. App. 129, 234 Pac. 906.)

The method of pleading and practice in a proceeding to disbar an attorney is not controlled by the same rules, in every respect, that prevail in ordinary common-law actions. Such a proceeding is special and of a summary character and the court will look to the substance of the charge rather than to the technical accuracy with which it is presented. (*Bar Assn. of City of Boston v. Scott,* 209 Mass. 200, 95 Am. Dec. 342, note; 95 N. E. 402; *State v. Maxwell,* 19 Fla. 31; Rule 43, Rules of Board of Commissioners of the Idaho State Bar; *State ex rel. Grievance Committee v. Woerndle,* 109 Or. 461, 209 Pac. 604, 220 Pac. 744; *State v. Greenfield,* 93 Or. 407, 162 Pac. 858.)

If one provision of an enactment is invalid and the others valid, the latter are not affected by the void provision, un-

less they are plainly dependent upon each other and so inseparably connected that they cannot be divided without defeating the object of the act. (*Knight v. Trigg,* 16 Ida. 256; 100 Pac. 1060; *Gillesby v. Board of Commrs.,* 17 Ida. 586, 107 Pac. 71; *State v. Bird,* 29 Ida. 47, 156 Pac. 1140.)

The legislature may provide an intermediary agency whereby the power of the court in disbarment proceedings can be more generally and efficiently exercised. (*In re Bruen, supra; In re Mills, supra; In re Ward, supra; McVicar v. State Board of Law Examiners, supra; In re Chapelle, supra; In re Ellis,* 118 Wash. 484, 203 Pac. 957.)

The Idaho State Bar and the board of commissioners thereof organized by these acts constitute only an administrative arm of the supreme court exercising certain *quasi*-judicial functions but possessing no judicial power, that power, by the express terms of the act, being reserved in its constitutional repository, the supreme court of Idaho. This arm is in no sense of the word a corporation. (*In re Bruen, supra; In re Mills, supra; In re Ward, supra; McVicar v. State Board of Law Examiners, supra; In re Chapelle, supra;* chap. 211, 1923 Sess. Laws, sec. 8; *In re Winthrop,* 135 Wash. 135, 237 Pac. 3.)

BUDGE, J.—On or about June 25, 1926, the board of commissioners of the Idaho State Bar appointed a committee to investigate the professional conduct of C. H. Edwards, an attorney of this court. Pursuant to such appointment, the committee proceeded to investigate certain charges lodged against said attorney. Witnesses were called and examined in support of, and in opposition to, the charges so filed. At the conclusion of the hearing, said committee made a report in writing to the board of commissioners. Thereafter, on or about August 16, 1926, the board made an order directing that Edwards be proceeded against for such alleged unprofessional conduct as was disclosed in the report of the investigating committee, whereupon a trial committee was appointed and a formal complaint lodged. In the formal complaint, Edwards was charged with conspiracy to

extort money, and with divulging secrets of his client, one Whitney, without the latter's knowledge or consent. To the formal complaint Edwards filed his answer. A hearing was duly had before the trial committee. Thereafter, the committee made findings of fact and conclusions, in which it found that Edwards was not guilty either of conspiracy or of divulging secrets of his client without the knowledge or consent of the latter, as alleged in the formal complaint, but recommended that Edwards be suspended from the practice for one year, the recommendation of suspension being based upon certain letters written by Edwards and introduced upon the hearing in support of the charges of conspiracy contained in the formal complaint. The board of commissioners reviewed the findings, conclusions and recommendation of the trial committee and modified and enlarged the same, in that the board found, first that Edwards was guilty of conspiracy; second, that he was guilty of giving away the secrets of his client without his client's knowledge or consent; and, third, that he was guilty of writing certain letters, "and that whether the writing thereof was misconduct on his part as an attorney and counsellor was in issue . . . . the letters written by Edwards show such a lack of propriety and regard for professional ethics as would bring into disrespect the courts of justice and judicial officers of the state of Idaho and constitute a violation of the rules of the Idaho state bar," and entered its judgment, subject to the approval of the supreme court, suspending Edwards from the practice of law within this state for a period of one year, the order of suspension to become effective upon the approval by the supreme court of the judgment of suspension so entered.

Within thirty days after the entry of the judgment of suspension, Edwards duly filed a petition in this court asking that the proceedings of the commissioners be reviewed and that the same be disapproved; that the order of suspension be vacated; that the findings and conclusions of the commissioners be stricken from the files; and for such other

and further relief as to the court might seem just and proper.

These proceedings are here for review and by virtue of Sess. Laws 1923, chap. 211, p. 343, and the amendments thereto as contained in Sess. Laws 1925, chaps. 89 and 90, pp. 124, 128.

[1] Numerous assignments of error are made by petitioner attacking the constitutionality of the provisions of the foregoing statutes. It is insisted that they contravene art. 3, sec. 19, and art. 11, sec. 2, of the constitution of this state.

Art. 3, sec. 19, reads in part as follows:

"The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: . . . .

"Creating any corporation."

Art. 11, sec. 2 provides in part:

"No charter of incorporation shall be granted, extended, changed or amended by special law," except in certain cases not material herein.

If petitioner is correct that the acts involved are *in toto* unconstitutional and void, it necessarily follows that all of the proceedings thereunder against him are vitiated and of no force or effect, and must be dismissed. We are, therefore, confronted at the outset with the question whether the acts, considered as a whole, create a corporation in violation of the sections of the constitution set out above.

The original act, Sess. Laws 1923, chap. 211, p. 343, was challenged in *Jackson v. Gallet*, 39 Ida. 382, 228 Pac. 1068, upon the same grounds. The constitutionality of the act was not, on these grounds, decided by a majority of the court. Certain provisions of the original act were pointed out and discussed which led the writer to reach the conclusion, as the act then stood, that it was unconstitutional in that it created a corporation and was a special act passed for that purpose, in conflict with art. 3, sec. 19, and art. 11, sec. 2, of the constitution, and therefore void.

The legislature in 1925, Sess. Laws 1925, chaps. 89 and 90, pp. 124, 128, amended the act of 1923 in a number

of important particulars. The question therefore arises whether the amendments cured the defects pointed out in *Jackson v. Gallet, supra,* or removed such objections as were thought fatal to the constitutionality of the act.

Sec. 2 of the original act, provided, among other things: " . . . . The board shall have perpetual succession, use a common seal and be authorized to receive gifts and bequests designed to promote the objects for which it is created and the betterment of conditions surrounding the practice of law. . . . . "

[2, 3] These provisions were eliminated by the amendment to sec. 2 in the Session Laws of 1925, chap. 89. Likewise removed was the power of the board to make and enforce rules, regulations and by-laws, the original act being amended by chap. 89, *supra,* to provide that rules and regulations made by the board shall, before becoming effective, be submitted to and approved by the supreme court. Under the amendment the board of commissioners of the Idaho state bar is without perpetual succession, without the right to receive and grant property in its name or to purchase or hold property, either real or personal, and without authority to have a common seal. Without these attributes, can it be said that the act as amended is unconstitutional, in view of the rule that, before a legislative act is held unconstitutional, it should clearly appear that it infringes some provision of the constitution? (*Noble v. Bragaw,* 12 Ida. 265, 85 Pac. 903; *Gillesby v. Board of County Commrs.,* 17 Ida. 586, 107 Pac. 71.) A doubt as to the constitutionality of an act should be resolved in its favor; and it is the duty of the court to adopt such a construction as will sustain the enactment, if its language will permit. (*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 117 Pac. 112; *Continental etc. Inv. Co. v. Hattabaugh,* 21 Ida. 285, 121 Pac. 81; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149.) A majority of the court is of the opinion that the acts do not create a corporation. No useful purpose could be served by a discussion of the numerous authorities to which our attention has been called in favor of and against the con-

stitutionality of these acts and acts analagous thereto.   We
have concluded from a very careful consideration of the acts,
the authorities cited for and against their validity, and such
independent investigation as we have been able to make,
that they are constitutional, except as to certain parts
thereof to which attention will be given.

Sec. 8 of the original act provides:

"The board of commissioners shall have power to deter-
mine, by rules, the qualifications and requirements for ad-
mission to the practice of the law and to conduct examina-
tion of applicants, and they shall from time to time certify
to the supreme court names of those applicants found to be
qualified.   The approval of the persons whose names are so
certified, by the supreme court, shall entitle them to be
enrolled in the bar of the state, and to practice law.   The
board shall formulate rules governing the conduct of all
persons admitted to practice and shall investigate and pass
upon all complaints that may be made concerning the pro-
fessional conduct of any person admitted to the practice
of the law.   In all cases in which the evidence, in the opin-
ion of a majority of the board, justifies such a course, they
shall take such disciplinary action by public or private
reprimand, suspension from the practice of the law, or
exclusion and disbarment therefrom, as the case shall in
their judgment warrant.   Upon the making of any order
by the board suspending or disbarring any member of the
Idaho state bar from the practice of law, the board shall
cause a certified copy thereof to be immediately filed with
the clerk of the supreme court.   The supreme court may in
any case of suspension or disbarment from practice review
the action of the board, and may on its own motion, and
without the certification of any record, inquire into the
merits of the case and take any action agreeable to its
judgment.   The board of commissioners shall also have
power to make rules and by-laws not in conflict with any
of the terms of this act concerning the selection and tenure
of its officers and committees and their powers and duties,

and generally for the control and regulation of the business of the board and of the Idaho state bar.

"The board of commissioners shall also have power to provide for the discipline of its officers and the members of its committees in the event of refusal, neglect, failure or corrupt or wrongful performance of their respective duties."

This section cannot be sustained in its entirety, if it be construed to confer judicial powers upon the board. Such rules as it may adopt which do not receive the approval of the supreme court and become the rules of this court, prescribing the qualifications and requirements for admission to practice law and the manner in which examinations shall be conducted, are without force or effect, since by sec. 12 of chap. 89 (Sess. Laws 1925, p. 127) it is provided:

"The rules and regulations made by the Board shall before becoming effective, be submitted to and approved by the Supreme Court of the State of Idaho."

It will not be seriously contended that the supreme court is bound to give its approval to the admission of such persons only, to practice law, whose names are certified by the board.

[4] That portion of sec. 8 which provides that "The board of commissioners shall also have power to provide for the discipline of its officers and the members of its committees in the event of refusal, neglect, failure or corrupt or wrongful performance of their respective duties," must be stricken from the act, as void, for the reason that it confers upon the board judicial powers. The board is not clothed with power to inflict punishment, reprimand publicly or privately, discipline members of the bar or members of committees appointed by it.

Under rules formulated by the board, and adopted by the supreme court, empowering the board to investigate and pass upon all complaints that may be made concerning the professional conduct of any person admitted to the practice of the law, these rules are not subject to any constitutional inhibition, since the board acts merely in an administrative capacity and as an arm of the supreme court, clothed

under its rules with the power to make investigations and return to the supreme court its findings and conclusions thereon. It follows, therefore, that that portion also of sec. 8 of the original act which provides: " . . . . In all cases in which the evidence, in the opinion of a majority of the board, justifies such a course, they shall take such disciplinary action by public or private reprimand, suspension from the practice of the law, or exclusion and disbarment therefrom, as the case shall in their judgment warrant," is an attempt upon the part of the legislature to clothe the board with judicial powers, and is therefore void.

[5, 6] Sec. 11 of the original act provides:

"The board of commissioners shall establish rules governing procedure in cases involving alleged misconduct of members of the Idaho state bar, and may create committees for the purpose of investigating complaints and charges, which committees may be empowered to administer discipline, including suspension or disbarment from the practice of law, in the same manner as the board itself, but no order for the suspension or disbarment of a member shall be binding until approved by the board. . . . . "

Since no power can be conferred upon the board to administer discipline, including suspension or disbarment from the practice, a committee appointed for the purpose of investigating complaints and charges would clearly be without power to administer discipline, including suspension or disbarment from the practice, such powers being judicial and not administrative, and not within the power of the board or any committee appointed by it. But it does not necessarily follow that the board is without power to appoint committees for the purpose of investigating complaints and charges against members of the bar and reporting their findings to the board.

[7, 8] We are of the view that we are strictly within the well-known rule of law that where certain provisions of an act are invalid and others valid, the latter are not affected by the void provisions, unless they are plainly dependent on each other and so inseparably connected that

they cannot be divided without defeating the object of the act. The invalid provisions of the act, heretofore pointed out, and possibly there are others, together with the valid provisions, are not so dependent upon each other or so inseparably connected that the invalid cannot be separated from the valid, and the act upheld. (*Knight v. Trigg,* 16 Ida. 256, 100 Pac. 1060; *Gillesby v. Board of Commrs., supra; State v. Bird,* 29 Ida. 47, 156 Pac. 1140; *In re Bruen,* 102 Wash. 472, 172 Pac. 1152; *In re Mills,* 104 Wash. 278, 176 Pac. 556; *In re Ward,* 106 Wash. 147, 179 Pac. 76; *McVicar v. State Board of Law Examiners,* 6 Fed. (2d) 33.)

[9] It is urged by petitioner that the act as amended violates the provisions of art. 1, sec. 13, of the constitution, which provides, *inter alia:*

"  . . . . No person shall be . . . . deprived of life, liberty or property without due process of law."

We are by no means convinced that petitioner is denied due process of law. Provision is made in the act for a full and complete hearing of all charges or complaints lodged against a member of the bar, and for a review before the board, coupled with a review by the supreme court of what in effect would be findings of a fact-finding committee, the facts and law both being subject to review and final disposition by the supreme court. The act specifically provides (sec. 8):

"  . . . . The supreme court may in any case . . . . review the action of the board, and may on its own motion, and without the certification of any record, inquire into the merits of the case and take any action agreeable to its judgment. . . . . "

[10] Art. 1, sec. 18 of the constitution reads as follows:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice."

Petitioner insists that under the statutes involved herein a hearing before an impartial body is not provided for, and

for that reason the statutes are in contravention of the foregoing constitutional provision and should not be upheld. Under the provisions of the acts here involved, the committee appointed to investigate can merely report its findings to the board, whereupon a trial committee may be appointed. Before both committees a full and complete hearing may be had, said committees acting in capacities similar to referees, reporting their findings and conclusions to the board, before which latter body a full and complete review is provided for, with a right of review of its findings, conclusions and recommendations in the supreme court, where a still further hearing is provided for.

In *McVicar v. State Board of Law Examiners,* 6 Fed. (2d) 33, it was held that a statute which authorized a member of a similar board to prefer charges against an attorney, and then to sit as a member of the board for the consideration of the charges so preferred, was not void. (See, also, *Matter of Jones,* 159 App. Div. 782, 145 N. Y. Supp. 65.)

[11, 12] The acts are further attacked upon the ground that they are in violation of art. 2, sec. 1 of the constitution, in that said acts delegate to the supreme court and to the board both legislative and judicial powers. No legislative powers are delegated under the acts, and the board has no judicial powers. The supreme court has the inherent power to adopt rules and regulations prescribing the fitness and qualifications of persons seeking to practice before the courts of this state, and to ultimately determine whether, under the statutes or rules promulgated by it, persons possess the necessary qualifications, or are persons of good moral character. The supreme court has the additional inherent power to suspend or disbar an attorney for sufficient cause, and jurisdiction so to do does not necessarily depend upon statutory enactments. (6 C. J. 580, 581, sec. 37.)

[13] It is also urged that the original act and amendments thereto violate art. 3, sec. 16, of the constitution in this, that the subject is not embraced in the title of the acts, and that said acts and each of them embrace more than one

subject, except chap. 89 of Sess. Laws 1925, p. 124, which chapter has no subject embraced in the title as required by the constitution.

In *Jackson v. Gallet, supra,* a portion of the original act was held to be unconstitutional for the reason mainly that secs. 9 and 10 of said act purported to appropriate state moneys for the purpose of carrying out the objects of the act, while the title of the act was to the contrary, and from the title the state was to be relieved from the expenditure of state moneys. License fees to be paid under the provisions of the act were payable to the state treasurer, and when received by that officer became state moneys, subject only to appropriation by a valid act of the legislature. It was said in *Jackson v. Gallet, supra:*

"Legislators reading the title of the act could reach but one conclusion, namely, that the state would be relieved of the cost of holding examinations for admission to the bar, and that the body of the law made provision for such relief, which it did not do. A title which is delusive or false violates the constitution. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962.) Hence, so far as an appropriation is concerned, since the title does not suggest an appropriation of state moneys but negatives the idea, those portions of the act which attempt to appropriate state moneys must fail."

Sess. Laws 1925, chap. 90, p. 128, amends and corrects the original act in this respect and therefore overcomes the objections made thereto.

[14] Petitioner also takes exception to chap. 89, Sess. Laws 1925, p. 124, which is amendatory of the original act, upon the ground that said act violates art. 3, sec. 16 of the constitution in that no subject is embraced within the title as required by the constitution. The title of the latter act recites that it is an act amending secs. 2, 3, 4, 7, 12, 16 and 17 of the original act, and by reference to the title of the original act the subjects embraced in that act and in the amendatory act are fully set out. No useful purpose could be served by repeating in the amendatory title the

692              IN RE EDWARDS.              [45 Idaho,

subjects set out in the title of the original act. It was held in *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962:

" . . . . The courts must give a liberal construction to the language used by the legislature in framing the title to any given act which they may pass."

[15] The object of the title is to give a general statement of the subject matter, and the title of an amendatory act is sufficient if in such title attention is called to the original act the title of which fully embraces the subject matter of the act. The purpose of the provision of the constitution above cited is to prevent deception of the members of the legislature and the people. No deception could have been practiced upon either the members of the legislature or the people by omitting to repeat in the title of chap. 89, *supra,* the subject matter of that part of the original act amended.

[16] It is also urged that the acts involved violate the provisions of art. 5, sec. 2, of the constitution, in that they create a court other than those provided for in said article and section. From what has been said heretofore, no other conclusion can be reached than that this contention is without merit. The same may be said as to the point sought to be made that the "said chapters of law violate sec. 13, art. 5 of the constitution of Idaho in that said law provides a method of procedure in the supreme court and deprives the supreme court of its jurisdiction and powers."

[17] It is further contended that the acts are void in that private funds are appropriated for private use. License moneys are the only moneys that are exacted or paid to carry out the purposes of the acts. These moneys are paid into the state treasury, and when paid are no longer private funds, but become public funds subject to appropriation in the usual way. The payment of these funds is under the jurisdiction and control of the state board of examiners and the state auditor, and they are disbursed as other public moneys. We have examined chap. 90, Sess. Laws 1925, p. 128, amendatory and corrective of chap. 211, Sess. Laws 1923, the original act, and we are of the opinion that both the title and the act are sufficient to constitute

a legal appropriation of the moneys coming into the hands of the state treasurer for disbursement, as other public moneys. These funds are neither collected by the board nor disbursed except as provided by law, and in no essential are they different from other public moneys.

[18] The trial committee found that Edwards was not guilty either of conspiracy or of divulging the secrets of his client. Inasmuch as that committee had the witnesses before it and observed their demeanor, we are disposed to adopt its findings in this regard. As to its finding that Edwards had written letters calculated to bring the courts and judges thereof into disrepute, it must be noted that there had been no formal charge of these particular acts. Trial can be had only on charges contained in the information or rule. (6 C. J. 605; *In re Baum*, 32 Ida. 676, 186 Pac. 927.)

[19] Attention has been called to the rule announced in *In re Tipton*, 4 Ida. 513, 42 Pac. 504, that where a crime indictable under statute is charged against an attorney of this court, in disbarment proceedings, the court will not proceed therein until proceedings have been taken in the district court, or until sufficient time has elapsed to afford the proper authorities opportunity to prosecute the accused in that court. This decision was based on early California cases cited in the opinion, and the rule has been departed from by the California courts ever since *Ex parte Tyler*, 107 Cal. 78, 40 Pac. 33. See for a review of the authorities intervening, *In re Danford*, 157 Cal. 425, 108 Pac. 322. The rule now followed by California and the great majority of the states is to the effect that where the offense charged consists of a violation of professional duty the court will entertain disbarment proceedings independent of any prosecution or conviction. We are constrained to hold in line with these decisions.

[20] The right to practice law is not a property right (*Cohen v. Wright*, 22 Cal. 293), but is a privilege or franchise (6 C. J. 569, and cases cited.) As was said in *Ex parte Garland*, 4 Wall. (U. S.) 378, 18 L. ed. 366:

"They (attorneys) hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded. Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power."

The letters written by Edwards are of such a character that further action should be taken by the board with reference thereto, but this court will take no action until a formal charge has been preferred and the defendant given an opportunity to answer.

The proceeding must be dismissed, with directions to the board to take further action with respect to the letters.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

(April 28, 1928.)

ON PETITION FOR REHEARING.

BUDGE, J.—Upon further consideration, it seems proper that these proceedings should not be dismissed, except as to the matter contained in the formal charges of conspiracy and disclosing secrets of his client without the latter's knowledge or consent, as to which matters the proceedings are dismissed. The cause is hereby remanded to permit a formal charge to be preferred, and an opportunity given to petitioner to plead thereto. We see no reason why evidence already taken, material to such formal charge to be filed, should be retaken. Counsel upon either side may submit such further evidence supplemental to the record already taken, as they see fit, and the commission make its findings and conclusions in conformity therewith.

The petition is denied.

Givens, Taylor and T. Bailey Lee, JJ., concur.

TAYLOR, J., Dissenting.—Such a lengthy dissent would be unjustified here except for three considerations: (1) The majority opinion contents itself with a mere conclusion of the constitutionality of the acts, which cannot be supported by precedent, authority, or reason. (2) Having been originally assigned the task of writing the decision of the court, and already written for such purpose what I here set forth, it involves little additional loss of time or labor. (3) A simple dissent, without citation of precedent or authority, would be no more justifiable, under the circumstances, than a bare declaration of the constitutionality of the act, without it. Lengthy discussion of the unconstitutionality of the act by a minority opinion, is not without precedent. (*Jackson v. Gallet*, 39 Ida. 382, 228 Pac. 1068.) Nor is the discussion therein met by the majority opinion here.

It is contended that the acts involved violate sec. 19, art. 3, and sec. 3, art. 11, of the constitution. Sec. 2, art. 11, provides:

"No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are or may be, under the control of the state; but the legislature shall provide by general law for the organization of corporations hereafter to be created. . . . . "

Sec. 19, art. 3, prohibits the passing of local or special laws "creating any corporation."

Sec. 16, art. 11, provides:

"The term 'corporation' as used in this article, shall be held and construed to include all associations and joint stock companies having or exercising any of the powers or privileges of corporations not possessed by individuals or partnerships."

An "association" is defined:

"An organized union of persons for a common purpose; a body of persons acting together for the promotion of some object of mutual interest or advantage." (Cent. Dict.)

"Any combination of persons whether the same be known by a distinctive name or not. Stroud, Jud. Dict." (1 Bouvier's Law Dictionary, 8th ed., p. 269.)

"An associating, or state of being associated; union; connection, whether of persons or things. . . . .

"Union of persons in a company or society for some particular purpose. . . . ." (Webster's New International Dictionary (1926), p. 140.)

"The court will 'look behind the name to the thing named. Its character, its relations, and its functions determine its position, and not the mere title under which it passes.'" Fletcher's Cyc. of Corporations, sec. 231.)

"Where the powers given are in such language as to make a corporation in effect, it will be so declared, although not actually expressed to be so by the Legislature. Whether an aggregate of individuals is a corporation is to be determined by the faculties and powers conferred on it, rather than by the name or description given to it. . . . . Express words are not necessary to create a corporation; the principle obtains that a corporation may be created by implication." (1 Thompson on Corporations, 3d ed., secs. 172, 173.)

"It is, indeed, a principle of law which has been often acted on, that where rights, privileges, and powers are granted by law to an association of persons, by a collective name, and there is no mode by which such rights can be enjoyed, or such powers exercised, without acting in a corporate capacity, such associations are, by implication, a corporation so far as to enable them to exercise the rights and powers granted." (Angell & Ames on Corporations, 9th ed., sec. 78.)

The proceedings and debates of the Constitutional Convention show that sec. 16, art. 11, of the constitution was adopted in face of an objection that "we all know what a corporation is." (2 Const. Conv., p. 1106.) There then were certain well-known and recognized powers and privileges distinctive of corporations, not possessed or enjoyed by individuals or partnerships, then a part of Revised Statutes,

sec. 2633, continued in force by the constitution. Many states had adopted similar provisions. (2 Hough on American Constitutions, pp. 645, 811.) And many courts had interpreted them.

Decisions which might appear to support the constitutionality of these acts will be found, upon analysis, to have arrived at their result either under different constitutional provisions, such as not applicable to public corporations, or applicable only to private corporations, or that the corporation was not of the kind prohibited, and thus not in the contemplation of the constitution, or a *quasi* corporation, and thus not a corporation at all.

The courts of New Jersey, Mississippi, California and Texas have held that their constitutional prohibitions are directed against creation of private corporations. (*Pell v. Newark*, 40 N. J. L. (11 Vroom) 550; *Van Cleve v. Passaic Valley Sewerage Commrs.*, 71 N. J. L. 183, 58 Atl. 571; *Feemster v. City of Tupelo*, 121 Miss. 733, 83 So. 804; *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S. W. 556.) The California courts, for a long time, both before and after some of the decisions cited in *Reclamation District v. Sherman*, 11 Cal. App. 399, 105 Pac. 277, had held similar districts to be corporations, referring to them in various terms; but that case, citing *People v. Reclamation District*, 117 Cal. 114, 48 Pac. 1016, as its original basis, and *Reclamation District v. Sacramento County*, 134 Cal. 477, 66 Pac. 668, reached the conclusion that such corporations are not private or municipal, are of an entirely different kind not contemplated by, or prohibited by, the constitution. *People v. Reclamation District*, 117 Cal. 114, 48 Pac. 1016, stated that such corporations have "no attribute or quality whatever of a corporation of any kind"; yet after that, seemed to find it necessary to support its conclusion by a recital that even if the district were a corporation, it was not municipal or private, and thus not within the constitutional inhibition.

*Beach v. Leahy,* 11 Kan. 23, holds that a school district is but a *quasi* corporation, and not contemplated by the constitution as among public corporations, and that only corporations proper are included in the intent of the constitution. To the same effect, are *Carson v. St. Francis Levee Dist.,* 59 Ark. 513, 27 S. W. 590, and *St. Louis, I. M. & S. Ry. Co. v. Board of Directors,* 103 Ark. 127, 145 S. W. 892, and *Reelfoot Lake L. Dist. v. Dawson,* 97 Tenn. 151, 36 S. W. 1041, 34 L. R. A. 725, as to levee districts.

*Duffy v. City of New Orleans,* 49 La. Ann. 114, 21 So. 179, often cited, has been wholly repudiated. *State v. Flower,* 49 La. Ann. 1199, 22 So. 623, specifically declares that the body there under consideration was a corpora-tion. (See, also, *State v. Kohnke,* 109 La. 838, 33 So. 793.)

*State v. Stewart,* 74 Wis. 620, 43 N. W. 947, 6 L. R. A. 394, holds that a commission of a drainage district is not a corporation, without much reasoning in its support. This case has been construed by Judge Sanborn, one time one of the ablest of counsel in Wisconsin, in *Globe Elevator Co. v. Andrew* (C. C.), 144 Fed. 871, wherein he holds that a grain and warehouse commission is a corporation within the letter of the Wisconsin constitution, but that as the state court of Wisconsin had held in the Stewart case that such corporations were not within the spirit of the constitution, he would follow the state court in that matter.

*Brattleboro Savings Bank v. Board of Trustees* (C. C.), 98 Fed. 524, holds that a township is not a corporation within the meaning of the constitution of Ohio; that the prohibition against "conferring corporate powers" has no application to a township. But the Ohio cases as to state institutions seem to have arrived at their conclusion upon the ground that the legislature had power under another section of the constitution to establish benevolent and other state institutions, and that "conferring corporate powers" thereon was not the creation of a corporation. (See *Neil v. Ohio Agricultural & Mechanical College,* 31 Ohio St. 15 (21), and *Thomas v. Ohio State University Trustees,* 195 U. S. 207, 25 Sup. Ct. 24, 49 L. ed. 160.) *Turner v. City*

of *Hattiesburg*, 98 Miss. 337, 53 So. 681, reaches the same conclusion as to a state normal college upon the same reasoning.

Many of the adjudications seem to bear the imprint of expediency, perhaps best indicated by 1 Fletcher on Corporations, sec. 230, which says:

"In determining the construction to be placed on the constitutional prohibition, the absence of a constitutional requirement that legislation be uniform, legislative exposition of the prohibitory provision, the situation of the state's corporation law as regards the existence of bad and vicious special charters, and expediency, would seem to be factors to be considered."

Expediency has no weight or place here. (*State v. Arregui*, 44 Ida. 43, 254 Pac. 788.) *City of Tyler v. Texas Employers' Ins. Assn.* (Tex. Com. App.), 294 S. W. 195), although considering another phase of constitutionality, used this language:

"Public policy cannot be contrary to the express provisions of the Constitution. When that instrument speaks, the matter is indelibly settled, and its wisdom cannot be questioned."

Those cases which rest upon distinctions that the entity under consideration is not the kind of corporation prohibited, in contemplation of the constitution, or *quasi* corporations, and thus not prohibited as corporations at all, can be of little force here, for our constitution makes no distinction under which any corporation, public or private, except "such municipal, charitable, educational, penal or reformatory corporations as are or may be under the control of the state," can escape the inhibition; nor can such entity be a *quasi* corporation and escape. While corporations in Idaho may be *quasi* public, *quasi* municipal or *quasi* private, depending upon their similarity to such or either of such corporations, the *quasi* character or resemblance of an association must stop short of the grant or exercise of powers or privileges possessed or exercised by corporations, and not possessed by individuals or partnerships, or it will be a corporation. Under our constitution, the term "*quasi* cor-

poration'' is inapplicable to an association having such powers. It is a corporation, though it may still be *quasi* public, *quasi* private or *quasi* municipal, or the like, as the term is sometimes defined, depending upon its similarity to such, or either of such, corporations. But, possessing such powers or privileges, it cannot be denied to be a corporation by the application of any such qualifications as *"quasi."* Of this term, the court in *School District No. 56 v. St. Joseph Fire & M. Ins. Co.*, 13 Otto (U. S.), 707, 26 L. ed. 601, says:

"In response to this it is said that a school district is only a *quasi* corporation, and does not come within the constitutional provision. What is meant by the words *quasi* corporation, as used in the authorities, is not always very clear. It is a phrase generally applied to a body which exercises certain functions of a corporate character, but which has not been created a corporation by any statute, general or special."

It is argued that the Idaho State Bar and the Bar Commission are but governmental agencies. To argue that an entity is a governmental agency does not negative its being a corporation. (*Gross v. Kentucky Board of Managers*, 105 Ky. 840, 49 S. W. 458, 43 L. R. A. 703.) By sec. 2, art. 11, of the constitution, corporations as government agencies are recognized, and the naming of municipal, charitable, educational, penal or reformatory corporations, excludes others, whether under the control of the state or not, from being created by a special act.

Nearly if not quite all the cases calling the body in question a governmental agency may be distinguished in that they were considering mere boards and creatures not in their nature associations. The acts were not similar to this, welding into one body an aggregate of members, here some six hundred attorneys, plainly an "association," which lexicology would not recognize as anything else, which, by giving it corporate powers and privileges, makes of it a corporation.

"Any body of persons capable of acting as an entity and in a single name fixed by law, and having succession, is in

some sense a corporation. And as a general rule an association of individuals becomes a corporation when, by authority of law, it acquires a name by which its legal identity can be preserved through all the changes of membership, business, and sphere of action which it may undergo." (7 R. C. L., p. 28, sec. 6.)

Blackstone credits the Romans with the invention of corporations, to subdivide the Sabine and Roman factions into many smaller ones, making separate societies of every manual trade and profession. (1 Jones' Blackstone, sec. 633.)

A provision as to the right of a corporation to sue and be sued was stricken from the proposed draft of sec. 16, art. 11, of our constitution, on argument that "that is fundamental; it is a particular right of every corporation" (2 Const. Conv., pp. 1106, 1107), thus, an implied power. Blackstone sets forth at least five powers which corporations acquire after formed and named, which are tacitly annexed as incidents of their creation as of course: (1) To have perpetual succession; (2) to sue and be sued; (3) to purchase and hold lands; (4) to have a common seal; (5) to make by-laws. (1 Jones' Blackstone, sec. 645.) Other and later authorities have most often limited to a lesser number those characteristics, privileges or powers, the presence of which will constitute a corporation. (*Magill v. Brown*, 16 Fed. Cas. No. 8952, 408 (423).) *Thomas v. Dakin*, 22 Wend. (N. Y.) 9, constitutes an exhaustive review of authorities and principles which support the text of Thompson (sec. 173), and quite properly reaches the conclusion that a legislature cannot evade the constitution, even by a declaration that the entity they are there creating shall not be considered a corporation; also, that while there are a number of recognized powers and privileges which, if present, will constitute an association a corporation, not all of such declared by Blackstone to distinguish a corporation need be present; that, in fact, a number of the recognized characteristics are really nonessential; but declares that the two powers, of succession and of making by-laws, are recognized as distinctively corporate powers, not possessed or enjoyed by individuals. The court quotes with approval from Black-

stone that there are only two kinds of persons, natural and artificial; that a partnership is but an aggregate of natural persons, each one retaining his characteristics of an individual natural person; that an artificial person is a body corporate; and declares that when the law creates a body corporate, endowing it with powers or privileges not enjoyed or possessed by individuals, it has thus created a corporation. Chief Justice Nelson says further:

"Anyone comprehending the scope and purpose of them, at this day, will not fail to perceive that some of the powers above specified are of trifling importance, while others are wholly unessential. . . . . The distinguishing feature, far above all others, is the capacity conferred, by which *a perpetual succession of different persons shall be regarded in the law as one and the same body, and may at all times act in fulfilment of the objects of the association as a single individual.* In this way, a legal existence, a body corporate, an artificial being, is constituted; the creation of which enables any number of persons to be concerned in accomplishing a particular object, as one man." (Pages 70, 71.)

Justice Cowen, in the same case, considered certain things "peculiar to every aggregate corporation," saying:

"These are, in short, the receiving of peculiar laws and the making of by-laws for itself; perpetual succession, both as to its privileges and property; the having one will, as collected from the power of the majority to make by-laws; and the being but one person in law, a person that dies not, but continues the same individual, though its parts may change. . . . .

"The question is, can the various attributes conferred by the statute exist in any other than a body politic and corporate? Such a body, whatever it may be called in common parlance or otherwise, can be known in legal classification by its attributes alone. It is agreed by all the books, that no particular words are necessary to create a corporation." (Pages 91, 93, 94.)

After citing authorities, he says:

"The principle of these and the like cases is, that words of the king granting that a body of men shall have the power to hold property *or* enjoy the privileges, amount by the force of the phrase, by operation or implication of law, to the creation of a corporation. . . . . " (Pages 94, 95.)

*In re Carthage Lodge No. 365, I. O. O. F. (D. C.),* 230 Fed. 694, is an excellent review of authorities, reaching the conclusion that an association with corporate powers not otherwise obtainable, granted by law, is a corporation. (See, also, *Rosencranz v. City of Evansville,* 194 Ind. 499, 143 N. E. 593.)

*Liverpool & London L. & F. Ins. Co. v. Oliver,* 10 Wall. (U. S.) 566, 19 L. ed. 1029, holds that an insurance company organized in England is a corporation as understood under the laws of this country, although specifically declared by acts of Parliament not to be such. (See 1 Cook on Corporations, 8th ed., sec. 1.)

The title of Sess. Laws 1923, chap. 211, recites it as an act "providing for the necessary and proper organization and discipline of attorneys at law; . . . . providing for the organization and government of the Idaho State Bar. . . . . " The act makes every attorney admitted a member on payment of the license fee. He has a right to vote in his district for selection of a member of the Bar Commission. This Bar Commission has the powers of a board of directors. It was, under the law of 1923, granted perpetual succession, use of a common seal, and authorized to receive gifts and bequests, designed to promote the objects for which it is created, and the betterment of conditions surrounding the practice of the law.

It is argued that the amendments of 1925 left out these provisions. The acts of 1925 did not create anything; they simply amended the act of 1923. The test is, what did the law of 1923 create? In any event, the provisions of both elsewhere provide the capacity of indefinite succession of the Idaho State Bar and the Commission, defined as:

"A capacity, as contradistinguished from partnerships and other voluntary associations, to continue in existence indefinitely . . . . in spite of the withdrawal or death of any of its members." (3 Words & Phrases (2d series), p. 978.)

The power of succession still distinctly remains, both in the Idaho State Bar and the Commission, by the provisions of the act. The use of a common seal is little material as a power of a corporation. Even if deprived of the power to hold property, the Idaho State Bar and the Commission have the power to "enjoy privileges," in themselves a species of property, of itself a characteristic power of a corporation. (*Thomas v. Dakin, supra.*)

The board fixes the time for holding annual elections, and has power to prescribe rules and regulations (by-laws) in regard thereto, not in conflict with the act. They elect a president, vice-president, and secretary of the Idaho State Bar and *its* Board of Commissioners, and may select "such other assistants as the Board may require." The act further provides:

"The board of commissioners shall also have power to make rules and by-laws not in conflict with any of the terms of this act concerning the selection and tenure of its officers and committees and their powers and duties, and generally for the control and regulation of the business of the board and of the Idaho state bar.

"The board of commissioners shall also have power to provide for the discipline of its officers and the members of its committees in the event of refusal, neglect, failure or corrupt or wrongful performance of their respective duties."

An annual meeting is provided for, to be presided over by the president, "for the discussion of the affairs of the bar and the administration of justice." Special meetings of the bar may be held at such times and places as the board may designate. The term "Bar Association" has, by the amendments, been changed to "Idaho State Bar."

What is to be "business of the board and of the Idaho State Bar," and what are the "affairs of the bar" which are to be transacted under "rules and by-laws not in conflict with any of the terms of this act"? These clauses plainly contemplate that the board and the Idaho State Bar may have "business" "affairs" not inconsistent with the act, and other than the specific business provided by the act, thus, in its nature, having business of its own not specifically

subject to the act, and easily contemplated to be of such kind or character as to be a privilege and power not within contemplation of the power of the legislature in exercise of the police power, but for private interest, and may have or transact business other than those functions of a state agency. There is no apparent inhibition against its making of itself, in addition, a social or fraternal organization, anything it pleases, in addition to its required duties.

What beacon light of rule, or requirement of duty, is there enforced, other than the opinion, whim or fancy of the board for the common good? The fact that some or many of its rules or regulations must be approved by the supreme court is not controlling. Rules of public utilities similarly require the approval of the Utilities Commission.

Although an act conferring corporate powers may incidentally enhance the general prosperity of the whole community, the body created is none the less a private corporation, when it appears that it was also created to advance the private interests of the members. "The interest, therefore, which the public may have in a corporation, unless it has all the interest, does not necessarily make it a public incorporation." (*Board of Directors v. Houston*, 71 Ill. 318.) It would thus seem that, by the same token, to call that a public agency in which the private members have a private interest, would be to distort the law. Private conceptions of activities of a nature beneficial to the members of the bar, or the bar as a whole, which the legislature either might not have the power to prescribe or the desire to require under its police power, do not become public functions merely by their adoption as a part of a plan conceived by the board or bar, nor can they acquire the sanctity of law, or the character of police regulations, by voluntary adoption, nor by a legislative requirement, except they be authorized under the police power. The constitution in unmistakable language declares that an association having or exercising, not all, but any of the recognized powers or privileges of corporations not possessed by individuals or partnerships, shall be "held and construed" to be a corporation. No approved definition of a corporation and its characteristic powers can be found anywhere which

will not include some of the distinctively characteristic powers and privileges which are granted to the Idaho State Bar, and the Commission, its executive board.

*State v. City of Cincinnati*, 20 Ohio St. 18, construing a like provision, says:

"No one who has read the proceedings and debates of the convention which presented to the people of Ohio the framework of the constitution which the latter by their votes established and adopted, or is old enough to remember the apprehensions of evil consequences with which the conferring of corporate powers by special acts were regarded, can fail to see that it was one of the ends and aims of the constitutional convention, and of the people who adopted the framework of a constitution which that convention presented for their adoption or rejection, to cut up by the roots, at once and forever, all capacity of the general assembly to confer by special act any powers whatsoever upon any corporate body whatsoever."

In the language of *Thomas v. Dakin, supra*, "If the powers of the body politic and corporate can yet be denied of an institution such as we have been contemplating, the definitions of learned writers would seem from the earliest day, to be a mere series of mistakes." (Page 98.)

If further support were needed for my position, it is abundant. (See *Edgeworth v. Wood*, 58 N. J. Law, 463, 33 Atl. 940; *Waterbury v. Merchants' Union Exp. Co.*, 50 Barb. (N. Y.) 157; *Fargo v. McVicker*, 55 Barb. (N. Y.) 437; *Denton v. Jackson*, 2 Johns. Ch. (N. Y.) 320; *Westcott v. Fargo*, 61 N. Y. 542, 19 Am. Rep. 300; *Dunn v. University of Oregon*, 9 Or. 357; *Terry v. King County*, 43 Wash. 61, 9 Ann. Cas. 1170, 86 Pac. 210; *Mahoney v. Bank of the State*, 4 Ark. 620; *Commonwealth v. West Chester R. Co.*, 3 Grant's Cas. (Pa.) 200; *Case of Sutton's Hospital*, 10 Co. Rep. 23a, 77 Eng. Reprint, 960.)

To support this act is to say that whenever the legislature shall determine that public benefit will be subserved thereby, an association may be created by special act, and granted corporate powers and privileges, although in character neither "municipal, educational, charitable, penal or re-

formatory"; and the inhibitions of the constitution will be as a dead letter.

As said in *Jackson v. Gallet, supra,* and still true:

"If this law can be sustained upon the theory that it is not unconstitutional for the various reasons herein suggested, then no reason exists why like legislation cannot be enacted for the benefit of bricklayers, agriculturists, bankers or any other profession or calling, and all members of such classes, by legislative enactment, may be compelled to accept membership in such corporations in order to practice their profession or follow the calling of their choice.

" . . . . But such purpose, however praiseworthy, cannot be accomplished by an act in direct violation of the plain provisions of the Constitution."

That this organization is peculiarly "an arm of the court," or other endearing form of entity, while such other named possible corporations would not be, is a specious argument; likewise, that the amendments of 1925 have breathed the breath of life into the corpse of 1923.

The acts are void. While this proceeding should be dismissed, it appearing from the record that the petitioner has perhaps been guilty of unprofessional conduct, sufficient to call for discipline, the court should order proceedings had under C. S., sec. 6580.